ELIZA M. RIDER, Respondent, v. FREDERICK B. MILLER, Appellant.

In an action to set aside a deed on the ground of fraud and undue influence, it appeared that M. the grantor, who was seventy years of age, and who formerly had been a strong and vigorous man, had become, and was at the time, physically weak, and his mind so impaired as to require the assistance of others in his business affairs, and that he was unable to care properly for his own interests. Defendant, who was a nephew of M., employed S., a neighbor, with whom M. was on intimate terms, to procure the deed agreeing to pay $1,000 therefor. S. had the deed drawn by an attorney without the knowledge of any other person, he giving instructions as to its terms; he brought the attorney with the deed to his residence, then brought M. there, and the deed was executed and acknowledged before the attorney, who was a notary. M. had declared that he intended to give the farm to defendant, but at other times had said that his nephews and nieces were alike to him, and should share equally in his property. The deed conveyed the grantor's farm, reserving a life estate, and provided for the payment of $500 each to two sisters of the grantee. M., on his return home, stated, in answer to inquiries, that he had signed no paper in regard to his affairs, and, when questioned afterward, emphatically denied that he had executed a deed. About fifteen months after the execution of the deed, M. was adjudged a lunatic in proceedings *de lunatico*. Neither the defendant nor S. were called as witnesses. *Held*, that the evidence justified a finding of undue influence.

Also *held*, that the commission of lunacy was competent evidence.

Also *held*, that testimony of witnesses that certain acts and statements of M., specified by them, were irrational, was competent and properly received.

(Argued October 17, 1881 ; decided October 28, 1881.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, entered upon an order made at the June term, 1880, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought by plaintiff, as one of the heirs-at-law of Amasa B. Miller, deceased, to set aside a deed executed by him to defendant, bearing date February 23, 1870, on the ground of fraud and undue influence, and that the grantor was at the time *non compos mentis*. The grantor died intestate in

September, 1872. The deed conveyed the farm upon which he lived up to. the time of his death. His heirs-at-law were eighteen nephews and nieces. The parties were both nephews.
The further material facts are stated in the opinion.

*C. D. Adams* for appellant. If there was any capacity whatever in the grantor it was sufficient. (*Jackson* v. *King*, 4 Cow. 207, 217, 220; *Van Deusen* v. *Sweet*, 51 N. Y. 378, 382.) If the act was in accordance with previous known wishes, and fairly done, and there was any capacity, the deed should stand. (1 Jarman on Wills, 82, note 2; 21 Wend. 142; 24 id. 85; 26 id. 255; 4 Cow. 207; 5 Johns. Ch. 148; 3 Den. 37; 2 Cow. 498; 2 Bradf. 42, 490; 3 id. 170.) The proceedings in lunacy were not evidence to prove that Miller wanted capacity previous to August 26, 1870. (51 N. Y. 378; 3 N. Y. S. C. [T. & C.], 345; 4 Cow. 207.) The testimony of certain of plaintiff's witnesses, that from certain acts and sayings of Miller, they had the impression such acts and sayings were irrational, was incompetent and immaterial on the question of capacity. (17 N. Y. 340; 34 id. 190; 37 id. 276; 42 id. 270; 11 Hun, 214.) This class of evidence is covered by a general objection. (70 N. Y. 34, 37.) If the grantor was *compos mentis*, then, to make out undue influence, it should have been proved that fraud or coercion, or such means as destroy volition were used, and the deed was not his free and voluntary act. (2 Abb. Dig. 587, 406; 4 Cow. 207; 66 N. Y. 144–149; 3 Keyes, 663; 63 N. Y. 213–219; 70 id. 387, 394–404.)

*Ward Hunt, Jr.*, for respondent. The adjudication in lunacy was competent. It was *prima facie* evidence that the grantor was *non compos*, six months after the date of the deed, and was not too remote to be considered with other evidence in determining his condition at the time the deed was procured. (2 Paige, 427; 6 Wend. 497; 3 Hill, 513; 19 How. 140; 4 Seld. 395; 51 N. Y. 396.) The opinions and impressions of witnesses in regard to specific acts and conversations of the grantor, as related by them, were properly admitted. (17

N. Y. 340; 25 id. 37, 38; 34 id. 165; 2 Keyes, 231–2; 36 N. Y. 276; 34 id. 190; 55 id. 634; 18 S. C. 217.) Declarations by the grantor, first, of intention to give his farm to a nephew other than the defendant, and, second, of intention to make no distinction between the nephews and nieces in disposing of his property, and to give to all alike, were properly admitted. ( *Waterman* v. *Whitney,* 1 Kern. 157; *Johnson* v. *Hicks,* 1 Lans. 159.) On the facts the court was justified in declaring the deed void, without raising any presumptions, and it was also justified in giving effect to the presumptions. (4 Barb. 440; 21 N. Y. 578; 33 id. 508; 67 Barb. 91.)

MILLER, J. There was certainly strong evidence upon the trial of this case to show that the deed executed by the grantor to the defendant was not his free act and deed. He was at the time over seventy years of age, and the evidence clearly establishes that from a vigorous and strong man he had become weak and feeble *physically;* that his mind was impaired so that he was unable to attend entirely to his own business affairs, and that he required the assistance of others in matters of importance. His memory was failing, and on many occasions, as the proof showed, he was unable to properly care for his own interests and rights. He executed the deed to the defendant and denied that he had done so. Although he had declared that he intended to give his farm to the defendant, at different times he had also declared differently upon other occasions, and said that his nephews and nieces stood alike to him, and should share his property equally. It thus appears that his purpose in this respect was not a settled one, and from the circumstances presented he was precisely in that condition when he was liable to become the victim of fraud, imposition or undue influence. The proof shows that the defendant employed Andrew Schooley, who lived adjoining the grantor's farm, to whose house he was in the habit of going frequently, and with whom he was on intimate terms, to procure a deed conveying the farm to him, and agreed to pay him therefor the sum of $1,000. Schooley procured the deed to be drawn by an at-

torney, without the knowledge of any other person, giving in-
structions in regard to the terms, brought the attorney with the
deed to his own residence, then brought the grantor there and
the deed was then signed and acknowledged before the attor-
ney, who was a notary.   The deed conveyed the farm, reserv-
ing a life estate to the grantor, and provided that the defend-
ant should pay $500 to each of his sisters.   The grantor, after
returning home, upon inquiry, stated that he had signed no
paper in regard to his own affairs, but had done a little neigh-
borly business; and, when questioned afterward, emphatically
denied that he had signed a deed.   About fifteen months after
the deed was executed the grantor in proceedings *de lunatico in-
quirendo* was adjudged to be a lunatic. These facts were uncon-
tradicted ; and the deed was executed secretly, with no relative
present and under circumstances extremely suspicious.  The evi-
dence does not show that this was done at the suggestion of
the grantor, in pursuance of a prior declared intention or as a
voluntary act, but that it was procured by Schooley under a
promise of being paid a large sum of money.   In view of the
facts, with no explanation given, every intendment is against
the validity of the deed.   If the grantor had executed such a
conveyance of his own free will, without the intervention, or
pressure, or influence of an intimate friend, and with no con-
sideration to be paid for such intervention, it might be upheld.
It was in the power of the defendant to rebut the inferences
to be derived from the facts stated, and we think, as the case
stood, it was incumbent upon him to prove that the transac-
tion was without fraud or undue influence, and correct and
fair.   The defendant and Schooley, who knew all about it,
were not sworn as witnesses and gave no testimony.   The de-
fendant made no explanation of his conduct or of Schooley's
interference, and remained silent upon the trial when he should
have spoken, and these facts, we think, bear very much against
the defendant and tend to strengthen the plaintiff's case.
*Prima facie,* the influence brought to bear was of a character
to induce one whose mind was affected and impaired to yield
improperly to the importunity or the will and dictation of an-

other as the controlling power. This we think was undue and improper influence, within the meaning of the decisions. The exercise of undue influence need not be shown by direct proof, but may be inferred from circumstances, although they must be such as to lead justly to the inference that undue influence was employed, and that the instrument which was executed did not express the real wishes of the person who signed it. (*Brick* v. *Brick*, 66 N. Y. 144.) The deed in question would not have been given without the intervention of the defendant by the employment of Schooley, under the promise of a large pecuniary reward, entirely disproportionate to the services rendered, and the conclusion is irresistible from the evidence that undue influence was exercised in procuring the conveyance. Under the circumstances the finding of the judge upon the trial, that the grantor was controlled and directed by undue influence exercised by Schooley, and that the conveyance and its execution was not his free act and deed, is supported by sufficient evidence.

We think that there was no valid objection to the testimony of several witnesses, sworn upon the part of the plaintiff, as to their impressions derived from specific acts and conversations of the grantor at different times, that is, that were irrational, and within the authorities evidence of this character, under the circumstances, was properly received.

The inquisition of lunacy was also competent and *prima facie* evidence, that at the time it was taken the grantor was. not competent. To this extent and no more it was material, and whatever inference is to be derived therefrom prior to that time was a subject for consideration by the trial court.

The judgment was right and should be affirmed.

All concur.

Judgment affirmed.