THOMAS B. HOLCOMB, as Administrator, etc., Respondent, *v.* FRIEND H. HOLCOMB, Appellant.

The opinion of a witness, not an expert, as to the mental condition of another is not competent, save in the case of a subscribing witness to a will, although based upon what the witness himself saw and heard.

The extent to which the examination of such a witness may go is this, where he has testified to facts within his knowledge and observation, *i. e.*, acts and declarations of the person whose mental condition is the subject of inquiry, tending to show soundness or unsoundness of mind, he may characterize them as rational or irrational; his testimony must be limited to his conclusions from the facts testified to by him.

Where, therefore, in an action to set aside an assignment of a bond and mortgage because of the mental incapacity of the assignor, a witness, not an expert, was allowed to testify under objection and exception that from what he had observed of the acts and conversations of the assignor he considered "his mind was gone;" and other witnesses, after testifying to interviews with, and acts of the assignor, in answer to questions, asking them to characterize his condition, pronounced him imbecile. *Held*, that the testimony was incompetent, and its reception error.

The action was brought by the administrator of the assignor. *Held*, that his next of kin were interested in the event of the action within the meaning of the provision of the Code of Civil Procedure (§ 829) excluding such witnesses from testifying to "personal transactions or communications" between themselves and the deceased.

The words "transactions or communications" as so used include every method by which one person can derive any impression or information from the conduct, condition or language of another.

Although, to come within the prohibition, the transaction or communica-

Statement of case.

tion must have been a personal one, it need not have been private or confined to the witness and deceased.

The policy of the statute excludes testimony of an interested witness concerning any transaction with the deceased in which the witness in any manner participated, or of any communication in his presence or hearing, if he in any way was a party thereto,

Accordingly *held*, that testimony was improperly received of interested witnesses as to conduct and actions of the deceased, tending to show his enfeebled and dependent condition, and as to statements made by him, although not addressed to the witness, and made in ignorance of his presence.

(Argued February 25, 1884; decided March 18, 1884.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made July 2, 1883, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term.

This action was brought to set aside the assignment of a bond and mortgage executed by Homer Holcomb, plaintiff's intestate, on the ground that, at the time of the execution thereof, the assignee was of unsound mind, also on the ground of undue influence.

The facts so far as material are stated in the opinion.

*R. E. Andrews* and *Joseph Hallock* for appellant. Witnesses, not experts, may testify whether or not the acts which they saw and state impressed them as rational or irrational; but must not give an opinion as to mental soundness or unsoundness, capacity or incapacity. (*O'Brien* v. *People*, 36 N. Y. 282; *Hewlett* v. *Wood*, 55 id. 634, 635 ; *Real* v *People*, 42 id. 282; *In re Ross*, 87 id. 514, 520; *Clapp* v. *Fullerton*, 34 id. 190 ; *Rider* v. *Miller*, 86 id. 511 ; *Eckler* v. *Eckler*, 14 Week. Dig. 218, 219 ; 34 N. Y. 190 ; 42 id. 270; 55 id. 634 ; *Dewit* v. *Bailey*, 17 id. 340; *Church* v. *Howard*, 79 id. 421 ; *Dilleber* v. *Home Ins. Co.*, 69 id. 260 ; *Hobart* v. *Hobart*, 62 id. 83; *Bergman* v. *Jones*, 18 Week. Dig. 161; *Williams* v. *Fitch*, 18 N. Y. 546 ; *Foote* v. *Beecher*, 78 id. 155 ; *Capron* v. *Thompson*, 86 id. 418.) Error was committed in the admis-

sion of evidence of personal transactions, between witnesses and deceased, in violation of section 829 of the Code. (*Hier* v. *Grant,* 47 N. Y. 281 ; *Maverick* v. *Maverick,* 90 id. 656 ; *Schoonmaker* v. *Wolford,* 20 id. 166 ; *Snyder* v. *Shannon,* 11 Week. Dig. 158.) A general objection to evidence of personal transactions between witness and a deceased person is good without specifying any grounds of objection. (*Tooley* v *Bacon,* 70 N. Y. 37; *Brague* v. *Lord,* 67 id. 495.) A general objection is good if it appears that there are some grounds which, if they had been specified, could not be obviated; or if the evidence, in its essential nature, is incompetent. (*Bergman* v. *Jones,* Ct. of App., Nov., 1883 ; 18 Week. Dig. 161.) The evidence did not justify the finding that Homer Holcomb was mentally incompetent to transfer the bond and mortgage. (1 Jarm. on Wills, 57, No. 1 [5th Am. ed., by Bigelow, 1881] ; *Comstock* v. *Hadlyme,* 8 Conn. 264 ; *Rambler* v. *Tryon,* 7 S. & R. 95 ; *Kinne* v. *Kinne,* 9 Conn. 105; *Converse* v. *Converse,* 21 Vt. 168 ; *Kirkwood* v. *Gordon,* 7 Rich. [S. C.] 474 ; *Hewlett* v. *Wood,* 62 N. Y. 79 ; *Delafield* v. *Parish,* 25 id. 97 ; Brown's Med. Jur. 95, 208 ; 1 Beck's Med. Jur. 846 ; *Forman Will,* 54 Barb. 289 ; Redfield on Surr. 289 ; Dean's Med. Jur. 572 ; *Skinner* v. *Johnson,* 60 Barb. 75 ; Abbott's Encyc., title "Insanity.") Undue influence must be proved, and cannot be presumed from opportunity or motive. (*Post* v. *Mason,* 91 N. Y. 539.) Because of the illegal introduction of evidence a new trial should be granted. (*Hobart* v. *Hobart,* 62 N. Y. 84.)

*Griswold & Crowell* for respondent. Section 829 of the Code does not exclude evidence of a witness interested, as to conversations overheard by the witness between a third person and the deceased. (*Simmons* v. *Sisson,* 26 N. Y. 264; *Egbert* v. *White,* 59 id. 336.) The two questions, " What was your father's habit with regard to going to your house? " etc., and " How often he was at your house; how he came there from spring of 1869 ? " etc., were admissible under section 829 of the Code. (*Hobart* v. *Hobart,* 62 N. Y. 82 ; *Frank-*

*lyn* v. *Pinckney,* 18 Abb. 186; 2 Rob. 429; *Matter of Page,* 62 Barb. 478.) A non-expert witness may testify to· the impressions produced by what he witnessed, and may characterize as rational or irrational the acts and declarations to which he testifies. (*Clapp* v. *Fullerton,* 34 N. Y. 190–195; *O'Brien* v. *People,* 36 id. 282; *Howlett* v. *Wood,* 55 id. 634.) A non-expert witness may go to the full extent in his opinion, but must be limited in his opinions and impressions to what. he saw and heard. (*De Witt* v. *Barley,* 17 N. Y. 340, 348, 350–353; *Hobart* v. *Hobart,* 62 id. 82.) It was proper to show the appearance, physically and otherwise, of the intestate. (*Graham* v. *Price,* 25 Hun, 2.) Words, if uttered to and in reply to a witness's question to deceased, amount to a conversation or communication between them, which should be excluded under section 829 of the Code. (*Smith* v. *Ulman,* 26 Hun, 386; *Krushaar* v. *Myer,* 72 N. Y. 602.) · A court of equity interposes to set aside instruments between parties standing in the relation of parent and child, guardian and ward, physician and patient, attorney and client, principal and agent, and various relations in which one party is so situated as to exercise a controlling influence over the will ·and conduct of another. (*Seers* v. *Shaffer,* 60 N. Y. 268; *Brock* v. *Barnes,* 40 Barb. 528; *Comstock* v. *Comstock,* 57 id. 453; *Evans* v. *Ellis,* 5 Denio, 64; Story's Eq. Jur., § 315; *Brock* v. *Barnes,* 40 Barb. 528.) In an equity case tried by the court the inquiry is, is there enough upon the whole case to show the decision was substantially right. (*Forest* v. *Forest,* 25 N. Y. 501, 510; *Post* v. *Mason,* 91 id. 539; Code, § 1003; *Clapp* v. *Fullerton,* 34 N. Y. 190, 195; *Sutherland* v. *Rose,* 47 id. 144, 150; 78 id. 155; 66 id. 144.) A new trial will not be granted on the ground that improper testimony was received or rejected on the trial, if the court is satisfied with the result. (*Clark* v. *Brooks,* 2 Abb. Pr. [N. S.] 385; 1 Barb. Ch. Pr. 459–61; 1 Van Santvoord's Eq. Pr. 585–6–8; *Lansing* v. *Russell,* 2 Com. 563.) This rule is not affected by the late Code. (*Madison University* v. *White,* 25 Hun, 493; Throop's Code, § 1003 and note.)

DANFORTH, J. The plaintiff averred, and the defendant by answer admitted that the bond and mortgage in question were assigned, transferred and delivered by Homer Holcomb, the plaintiff's intestate, to the defendant. The plaintiff's right to the relief sought in this suit depended upon his showing either that at the time the transfer was made, the assignor was imbecile, or unsound of mind, and mentally incompetent and incapacitated to make the same, or that the transfer was procured by the defendant by threats, oppression or other undue influence. These things are alleged in the complaint as the grounds of action. The jury have found both allegations to be true, and the only question for our consideration is whether improper testimony was received and submitted to them as evidence upon which such a result might be reached.

The assignment was dated April 1, 1875, and acknowledged February 3, 1876. The intestate died on that day. *First,* many witnesses, called by the plaintiff, delivered their opinions as to the mental condition of the assignor, and, *second,* many members of his family, entitled to share in the avails of this judgment, if it be sustained, testified to his transactions and conversations. The contention of the appellant hangs upon these two circumstances.

The general rule is not disputed that in ordinary cases a witness ought to be examined as to facts only, and not as to any opinion or conclusion which he may have drawn from them. An admitted exception to this rule is found in cases where the conclusion to be drawn is an inference of skill and judgment. It is not claimed that the witnesses to whom I have referred were especially versed in the matter to which their attention was directed, nor were they presented to the jury in the character of experts; but the respondent insists that as mere observers of the subject of inquiry, they were equally competent to express an opinion, provided it was formed upon what they saw and heard, and cites to this point *De Witt* v. *Barly* (17 N. Y. 340). When that case was first before this court (9 id. 371) it was held by a divided court, after a very full discussion by several of its members, that unless

specially qualified by scientific knowledge to judge of such matters, the opinions of witnesses were not competent evidence of the soundness or unsoundness of mind of a grantor at the time of execution of a deed. This rule necessarily excluded the opinions of laymen upon questions of mental capacity. Upon the second appeal the rule was somewhat modified, and the court held such evidence admissible, but that the witness must state, so far as he is able, the facts and reasons upon which he bases his conclusion, in order that the jury may test the accuracy of his opinion, and if from such statement they were able to see that his conclusion is unfounded, they are of course to disregard it.

In *Clapp* v. *Fullerton* (34 N. Y. 190), with both these decisions before it, the court reiterated with some amplification the rule laid down upon the last occasion, saying, when a layman is examined as to facts within his own knowledge and observation tending to show the soundness or unsoundness of a testator's mind, he may characterize as rational or irrational the acts and declarations to which he testifies. " But," they add, " to render his opinion admissible even to this extent, it must be limited to his conclusions from the specific facts he discloses. He may testify to the impression produced by what he witnessed, but he is not legally competent to express an opinion on the general question whether the mind of the testator was sound or unsound."

The limitation applied to such witnesses is made more apparent by the exception in favor of subscribing witnesses, who may be required to state not only such facts as they remember, but their own conviction of the testator's capacity. (*Clapp* v. *Fullerton, supra.*)

The rule which I have quoted from the case cited was adhered to in *O'Brien* v. *People* (36 N. Y. 276), where, after describing the appearance and manner of the person concerned, the witness was asked : " Was he, or not, in your opinion, insane or delirious." This court held the question to have been properly excluded, because it contravened the rule referred to. In *Real* v. *People* (42 N. Y. 270) witnesses testified to facts

tending to show the mental unsoundness of the accused, but the court held that they could not be permitted to testify as to what they thought of his state of mind, or of their impression as to his state of mind. In *Hewlett* v. *Wood* (55 N. Y. 634) the rule laid down in *Clapp* v. *Fullerton*, and quoted in the *O'Brien* and *Real* cases was again relied upon and applied. In *Rider* v. *Miller* (86 N. Y. 507) testimony was held admissible of impressions of the witness that specific acts and conversations of the grantor at different times were irrational, and in the more recent case of *In re Ross* (87 N. Y. 514), the rule of evidence given in the preceding cases is re-stated. It flows legitimately from the reasoning of the court in *De Witt* v. *Barly* (*supra*), and in all cases requires the witness to state the facts which he observed, whether they are acts or declarations, and limits his examination to the conclusions drawn from them.

This rule was violated in the case at bar. The subject in dispute was the mental condition of the assignor. The jury were to say whether he was capable of contracting. The plaintiff asked Abel Holcomb, a son of the assignor, "How would you characterize his acts and conversations from what you observed within the last two years of his life," and received for answer, "From his acts I considered his mind was gone." The question was objected to, and defendant's counsel also moved to strike out the answer, because, among other reasons, it was incompetent. The motion was denied and the defendant excepted. The acts referred to had not been specified, and, although the testimony of the witness embraced various matters, the question was not limited to those, and no clue was afforded the jury by which they could test the accuracy or value of the opinion of the witness.

In 1871 he was with the witness "three or four days, or a week." Question: "What did you notice about him then?" Objected to as incompetent. Answer: "I noticed, to be plain about it, that his mind was about as good as gone."

Woolhiser met him in the street and gives particulars of the interview. Being asked "What was your impression as to his

Opinion of the Court, per DANFORTH, J.

mental condition, from what you saw and what he said," the question was objected to, and was then put in this form: " What was your impression as to his mental condition. How would you characterize it?" The court: " You may give his appearance as well as you can." The witness replied, " My idea was that he had failed very much in his mind," and being again asked, " How did his actions and conversations appear to you," answered, " He appeared to be what we might call at the time imbecile, not in good healthy mind, what you would say, an imbecile." Frank H. Burroughs, plaintiff's son-in-law, being called by the plaintiff, said he first saw the intestate in the summer of 1874, at the defendant's house; was there present at an interview between his (witness') wife and the intestate. She said, " How do you do, grandfather." He did not know her until she told him who she was, and then he knew her. He did not have any thing particular to say, or manifest any pleasure at seeing her. He did not inquire about her father. The defendant came in and brought some wine, and gave some to all except the intestate. The witness says: " I think he, at the time, looked as if he wanted some wine. Looked as a child would. None was offered to him, and he did not have any." Witness proceeds: "I saw him in July, 1875. I was riding in a wagon with Thomas B. Holcomb. Met intestate in the road, walking by the side of the road with a cane. When we got to him we stopped, and Thomas got out and went to him and said, ' How do you do, father?' shook hands with him and asked him if he didn't know him. His reply was, he didn't know him. My father-in-law said, 'I am Thomas.' The intestate made no manifestation of gratification, or pleasure, or any inquiries of our family."

Asked by plaintiff's counsel:

" Q. How would you characterize his condition from what you saw of his acts what you heard?"

This was objected to by defendant's counsel as "incompetent and immaterial — witness not an expert."

The objection was overruled, and defendant excepted.

Witness answered: " His appearance and manner and what

he said, taking it altogether, I considered him imbecile and his mind gone. Indicating imbecility of mind."

Counsel for the defendant here moved to strike out the evidence that witness regarded the intestate as an imbecile, on the ground that it is an opinion of the witness, and that it is for the jury to draw their conclusion from the evidence or facts detailed by the witness.

Abel G. Holcomb, son of deceased, testifying to an interview with him during the last two or three years of his life, said : " From his acts I considered his mind was gone."

Defendant moved to strike that out. Motion denied and exception taken.

These are but instances illustrating the practice which appears to have been followed upon the trial. It cannot be doubted that the evidence was of a character to greatly prejudice the defendant. If the jury believed the witnesses and trusted to their opinions, it is difficult to see how they could have rendered any verdict other than the one which they did render. The assignor was presented to them by evidence pronounced competent, as one who had wholly lost his memory and understanding — as an imbecile, and the answer of the jury to the question whether his mind had become so impaired that he was mentally incompetent to comprehend and make the transfer of the bond and mortgage, was but an echo of the opinions which had been expressed in evidence. Such a person would necessarily be liable to be controlled, and a conclusion would easily follow that the act of assignment upon the validity of which the jury were to pass, was caused by undue influence.

There was also error in disregarding the prohibition of the statute (Code, § 829) as to evidence of personal transactions and communications between certain persons and the deceased. (1.) They were interested in the event of the action, because a recovery would create or increase a fund, in the distribution of which they would share. The defendant derived his title by assignment from the deceased person, and that title is the particular claim sought to be affected by their

testimony.  It should be borne in mind that its validity depends upon the mental condition of the assignor when it was executed.  The words of exclusion are as comprehensive as language can express : Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons, and include every method ,by which one person can derive impressions or information from the conduct, condition, or language of another.  The statute is a beneficial one and ought not to be limited or narrowed by construction.  Although it must appear that the interview or transaction sought to be excluded was a personal one, it need not have been private or confined to the witness and deceased.  If they participated, it does not change its character because others were present.  A contrary rule would defeat the reasonable intent of the statute that a surviving party should be excluded as one interested from maintaining by his testimony an issue which in any degree involved a communication or transaction between himself and a deceased person.  On the other hand such a party may testify to an independent fact, as was held in *Pinney* v. *Orth* (82 N. Y. 619) where a survivor was thought competent to contradict a statement made by a third party as to his presence at an alleged interview between himself and the deceased.  So also a distinction is taken between a communication exclusively between others, which the witness overheard, and one in which he himself took part, either actually, or by acquiescence. (*Simmons* v. *Sisson*, 26 N. Y. 264; *Lobdell* v. *Lobdell*, 36 id. 327; *Cary* v. *White*, 59 id. 336; *Pinney* v. *Orth*, *supra; Brague* v. *Lord*, 2 Abb. N. C. 1.)  In the case of *Cary* v. *White* the court regard it as settled that the provisions of the Code (§ 399) there under consideration, and which were not unlike those now in force (§ 829), do not preclude a party from testifying to the statement of a person deceased, made to a third person in the hearing of a witness.  Such a case was said not to fall within the letter of the statute, and the fact that another person is competent to speak as to

what occurred, is referred to as going far to take it out of the substantial reason of the statute.

It is obvious that a proper regard to the rights of suitors in the administration of justice requires the conditions upon which this conclusion depends to be strictly observed. The policy of the statute excludes the evidence of an interested witness concerning, 1st : Any transaction between himself and a deceased person, or in which the witness in any manner participated ; 2d : All communications between the person deceased and the witness, including communications in the presence or hearing of the witness, if he in any way was a party thereto, or communications to either one of two or more persons, if all were interested.

Each of these species of testimony is as much opposed to the spirit and intent of the statute as the other. If the proposed witness has asked a question of the decedent, and it is answered, it is a conversation ; if while the decedent is conversing with a third person, the witness by word or sign participates in it, or is referred to, his evidence of what occurred cannot be received. Within this rule the following evidence was improperly received : Abel G. Holcomb, a son of the deceased assignor, was asked, " Do you know any thing about his (the deceased's) having a spasm, or fits, or any thing ; what do you know about it ; what did you ever observe ? " The attention of the court had been called to the relationship between the witness and the grantor, and the objection was distinctly placed on section 829. He answered : " I remember once I was up there, he had one of those spells. I led him out to make water. I noticed when he straightened up, I had to catch him from falling back. I had to hold him and lead him back into the house." This evidence was to show the assignor's enfeebled and dependent condition, the very point in the case. Again : on the day in question, when the assignment was executed, this witness and his brother Norman were alone with the assignor. They were each allowed to give evidence as to what they saw of him at that time — his appearance and that he did not speak to either ; — by this witness that he did not open

his mouth while Norman was there, and by Norman substantially the same thing. Each testified to a mental and bodily condition of the assignor, as indicated by conduct which they observed and by his absolute inattention to them and their remarks, entirely incompatible with the possession of understanding, or the ability to comprehend the nature of the act — that of acknowledging the assignment, which he that day is said to have performed. Sherwood Holcomb, another son, after objection under section 829 of the Code, and as if to obviate its force, was asked, " State what you heard your father saying or doing, or what you heard your father say when it was not addressed to you."

A.: I have often heard him talking to himself and carry on conversations the same as though he was talking to somebody, and there was nobody in the house, that was in the room he occupied. I listened to hear what he was saying.

Q.: What was it?

Objected to by defendant's counsel, on the ground that it is incompetent and immaterial; also that it is a personal communication by Homer Holcomb to the witness and is excluded by section 829 of the Code.

Objection overruled and defendant excepted."

In this instance the witness prepared himself to hear what his father might say. His testimony is not made admissible because his father did not solicit the interview, and was even ignorant of his presence. The words, when spoken, became a communication which he received. It was then a communication to him. He answered, "I heard him talking in his bedroom. He would be talking to my mother, even asking her to come back." (She was not then living.) "I heard him a number of times."

The inquiry is pursued.

" Q.: What about his memory in the spring of 1869? A.: I thought he was very forgetful. Q.: What made you think so? A.: He would ask me questions, and may be ten or fifteen or twenty questions. He would ask me over again In a little while he would ask me again the same thing."

Thomas B. Holcomb, the plaintiff, who is also a son of the assignor, said:

"I recollect of meeting my father on the road just below Big Hollow, within two or three years of his death. I was in a wagon and he on foot, walking. I saw him ahead; he was tottering along feebly. I stopped my horse and spoke to him and he kind of stared at me."

Defendant's counsel moved to strike out the words "he stared at me," on the ground that it is a personal communication and excluded by section 829 of the Code.

Motion denied, and defendant excepted.

"Q.: What was the expression of his eyes and countenance?

Objected to by defendant's counsel on same grounds as last above stated.

Objection overruled and the defendant excepted.

A.: I don't think he knew me.

Q.: Would you think that his countenance did not indicate recognition?

Objected to by defendant's counsel on same grounds as last above stated.

Objection overruled and the defendant excepted.

A.: Yes, sir.

Q.: Did he speak to you?

Objected to by defendant's counsel on same grounds as last above stated.

Objection overruled and the defendant excepted.

A.: I think not. I got off the wagon.

Q.: What did he do after you took hold of him?

A.: He did not move away. I took him in my arms.

Defendant's counsel objected to what witness did.

Court: He may answer it. Exception by defendant.

A.: I took him in my arms and set him in my wagon. I went with him up to Lyman Payne's. In former days father's weight was from one hundred and sixty to one hundred and seventy-five pounds.

Q.: What was his weight then?

Objected to by defendant's counsel on same grounds as last above stated.

Objection overruled and defendant excepted.

A.: I should think not over seventy-five pounds — the lightest man I ever lifted.

Q.: Judging from what you heard him say then and afterward at Payne's, how would you characterize his appearance?

Objected to by defendant's counsel on the same grounds last above stated.

Objection overruled, and defendant excepted.

A.: He appeared almost exhausted, mentally and physically — imbecile."

None of this evidence can be justified. There was more of the same character. In some instances we see a plain and unmistakable personal communication and a personal transaction, and in all, such participation as brings the witness within the reason and policy of the prohibition imposed by statute.

It is contended by the learned counsel for the respondent that the errors should be disregarded as not affecting the result. But this we cannot say. On the other hand it seems that injustice may have resulted from the evidence adverted to, and in such a case, whether the action is for equitable or legal relief, the appeal of the aggrieved party should prevail.

The judgment appealed from should, therefore, be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.