### PAINE v. ALDRICH et al.

*(Supreme Court, General Term, First Department. May 15, 1891.)*

1. DEED—VALIDITY—CAPACITY OF GRANTOR.
    A deed will not be set aside on the ground of incapacity in the grantor to execute a deed when the only evidence of such incapacity is that the grantor was 92 years old, and was afflicted with the usual bodily infirmities of a man of that age.
2. OPINION EVIDENCE—MENTAL CAPACITY.
    On an issue as to mental capacity of a grantor to execute a deed a lay witness cannot testify as to whether in his opinion, based on conversations with the grantor, he was rational or irrational.

Appeal from special term, New York county.

Action by William Paine against Elizabeth W. Aldrich and others. The complaint was dismissed, and plaintiff appeals. For former report, see 13 N. Y. Supp. 455.

Argued before VAN BRUNT, P. J., and DANIELS and LAWRENCE, JJ.

*L. L. Kellogg*, for appellant. *G. P. Smith*, for respondents.

VAN BRUNT, P. J. Prior to the 28th of May, 1885, one John Paine was seised and possessed in fee-simple of certain real estate in the city of New York. On or about said day the said John Paine executed and delivered a deed of said premises to the defendant Elizabeth Noble, who conveyed the same to one William Coates in June, 1888. John Paine died in November, 1885. Certain other conveyances were made and proceedings had affecting the title to this property, whereby the title became vested in one Elizabeth Coates in April, 1889. On the 8th of April, 1889, Elizabeth W. Aldrich bought said premises from Elizabeth Coates, and received a deed therefor, paying full consideration. In June, 1889, this action was commenced by the plaintiff, who was interested in the estate of John Paine, deceased, to have the deed to Elizabeth Noble declared void upon the ground that at the time of its execution John Paine was *non compos mentis.* The defendant Aldrich was not originally made a party to this action, but was subsequently brought in, and answered, and upon the trial of the case, a large amount of testimony having been given, the learned judge found that the said John Paine at the time of the execution of the deed in question had sufficient capacity to execute the same, and dismissed the complaint upon the merits, and from the judgment thereupon entered this appeal is taken.

In the disposition of this appeal it is impossible to rehearse at length the evidence in the case, or to review in detail that which has been given by each witness; and the impressions which are left upon the mind upon reading the evidence, considering the relations of the parties and the nature of the evi-

dence, is all that can possibly be attempted. It also should be borne in mind that the learned judge before whom this case was tried had the benefit of having the witnesses before him, and could much better judge of their credibility than can this court, having only the record of what those witnesses testified to, unaided by the demeanor of the witness and his manner of testifying in concluding what weight is to be given to the evidence. Therefore, unless it appears that the conclusion arrived at is fairly against the reasonable construction of the evidence, that conclusion should not be interfered with. At the time of the transaction in question John Paine was a very old man, 92 years of age. He was feeble, his sight was impaired, his hearing was affected, and his memory had lost some of its original strength. If we are to believe the evidence of some of the persons surrounding him, he was undoubtedly in a condition of imbecility. But there is no question but that those symptoms upon which the physicians who were examined and testified in answer to hypothetical questions placed the most stress were grossly exaggerated and misrepresented by the witnesses called on the part of the plaintiff. The evidence tending to show unconsciousness of movements of the bowels and urine is beyond question untrue in its main features. Such incidents may have happened on one or two occasions, the reasons for which are easily ascertained, because it appears that on one occasion at least he had been given an overdose of medicine; but that (as the witness Theodore Carter swore) he was in the habit of unconsciously having movements of the bowels, and remained hours in that condition, only being discovered when he was undressed for bed, is absolutely untrue, because Mr. Paine was all the time surrounded with people who were taking care of him; and it is conceded by this man Carter that when he was undressed the odor was very offensive, and it is incredible that such an offensive condition of his person could exist for any length of time without discovery. It is true that this man, when recalled, endeavored to repair the blunder which he had made by swearing that he discovered that he had had movements from the odor. This one circumstance tends to show that this man Carter was ready to swear to anything which might tend to the advantage of the person on behalf of whom he was called, and shows that he was utterly unworthy of belief. There is another feature of his testimony, and that is that this old man was so feeble, and his mind so weak, that he could not feed himself. This man Carter had to do it all the time. Now, the evidence given by other witnesses shows beyond all question that Carter exaggerated this condition to a very great extent. With some kinds of food, in consequence of his feeble condition, he was unable to feed himself, but that that feebleness existed to so great an extent that that was the habit, as Carter claims, is amply disproved. Then a great parade is made of the fact that Carter was accustomed to fasten his napkin around his neck, one of the most ordinary things for the attendant upon an aged person to do. Then it is said that when Mr. Paine was accustomed to smoke he got the ashes from his cigars all over his clothes. If that is an evidence of imbecility, I am afraid that most smokers will have to give up the habit, or they will never be able to carry out any business transaction which cannot be attacked upon the ground that they are *non compos mentis*. With respect to the other witnesses, who were servants in the household, their evidence was very much of the same character, and evident amplification of incidents innocent in themselves, having no probative force whatever, but by exaggerations magnified into alleged facts of the gravest importance. It is said he could not recognize people, as an evidence of his imbecility, when the fact was that he was suffering from cataracts of the eyes, and could not see anything except in a downward direction. Under these circumstances it was not at all peculiar that his powers of recognition were somewhat impaired. So it is said he was accustomed to ask questions over again. The evidence shows that his hearing was to a great degree affected, which would account for very many of the in-

stances which have been referred to by the witnesses of the repetition of questions. It is true that some witnesses who were examined upon the part of the plaintiffs gave testimony tending to show that the mental powers of Mr. Paine had been considerably impaired, and some were allowed to testify as to whether they thought Mr. Paine was rational or not at the times when they called upon him, and who testified that he was irrational; that they did not think he could comprehend a business transaction very well, where there was very much money involved. Of course, testimony of this kind was entirely incompetent, usurping the functions of the judge who was trying the cause. He was to draw his conclusions in that respect from the evidence produced before him, and not have all his labors taken from his shoulders by the kindness of the witnesses. But these opinions do not overcome the fact that Paine did continue to transact his business up to the time of his death, and it does not appear that any members of his family had any idea prior to that time that this great degree of incompetency and imbecility actually existed. It is well settled that the mere infirmities incident to advanced age are not sufficient to justify the court in holding the acts of a party void because of incapacity. Such infirmities must have impaired the mental faculties to such an extent that the party cannot collect in his mind the particulars or elements of business to be transacted, and cannot hold them in his mind a sufficient length of time to perceive their obvious relations to each other, and cannot form a rational judgment in respect to them. The evidence in this case fails to establish that such was the condition of the mind of John Paine at the time he executed the deed in question.

Our attention is called to various exceptions to the exclusion of testimony, and to various exceptions taken to the admission of testimony. The court refused to admit the evidence of a lay witness as to whether John Paine was in his opinion rational or irrational, based upon his conversations with him. It is true that evidence of a like character was admitted from other witnesses called in favor of the plaintiff; but it was no error to refuse to allow the witness to answer this question, which is clearly within the prohibition of the rule laid down in the case of *Holcomb* v. *Holcomb*, 95 N. Y. 316. The objections to the question to the following effect: "Did Mr. Paine's conversations at the times described by the witness appear rational or irrational?" were not well taken. It is true that probably the form of the question was improper because it did not limit the inquiry sufficiently to the conversation which the witness had repeated as having taken place with Mr. Paine. If this defect had been called to the attention of the court it undoubtedly would have been remedied, the evidence itself being entirely competent. The objection to the evidence given by Sarah Dunn, upon the ground that she was interested in the result, does not seem to be well taken, because whatever interest she had was adverse to the success of the defendant, on whose behalf she was called as a witness and testified. But it is difficult to see in what manner she was in the slightest degree interested in the result of this litigation. Upon the whole case, therefore, we are of the opinion that the judgment appealed from should be affirmed, with costs. All concur.