LANIE M. PETRIE, Respondent, *v.* MORGAN PETRIE, Impleaded, etc, Appellant.

*Court of Appeals, June 2, 1891.*

Affirming 53 Hun, 638, mem.

*Evidence. Immaterial.*—Where the jury has expressly found that the decedent did not have testamentary capacity, the admission of incompetent testimony, tending to establish undue influence, is not prejudicial error.

Appeal from judgment of the supreme court, general term, fourth department, affirming order of Oneida circuit, denying a motion made upon the minutes for a new trial.

*Edwin J. Brown*, for appellant.

*C. D. Prescott*, for respondent.

O'BRIEN, J.—The purpose of this action was to partition certain real estate of which Nicholas H. Petrie died seized May 23, 1885. The plaintiff is his daughter and the defendants are his other children and heirs-at-law. The complaint proceeds upon the assumption that the father died intestate, but Morgan Petrie, the son, in his answer, set up a will alleged to have been executed and published by his father on the 30th of April, 1877, and admitted to probate on the 9th of December, 1884, by which all the land was devised to him,

subject to a small legacy to the plaintiff, and two other small legacies to her sister and mother. The validity of this will was the only controverted question involved in the trial. Upon the application of the plaintiff, the court directed that two specific issues or questions of fact, which were stated in writing, should be submitted to the jury. These questions were whether the deceased was, at the time it was claimed that the paper purporting to be his will was executed, mentally competent to make a will, and, secondly, whether the paper so purporting to be his will was made through fraud, duress or undue influence.

The jury answered the first question in the negative and the latter in the affirmative, thus determining both questions in favor of the plaintiff and against the validity of the will. The deceased at the time of the execution of the instrument was eighty-one years of age. His acts and declarations and numerous facts and circumstances, occurring at or about the time the paper was signed, were given in evidence, indicating a weak and enfeebled condition of the mind. The impression which his acts and declarations had made upon his neighbors and acquaintances was also shown. The proof upon this issue was conflicting, but of such a character as to require the trial court to submit it to the jury. The rules by which the jury should weigh the evidence and determine the fact were stated by the learned trial judge in a very fair and impartial charge, and we are concluded by the finding. The finding that the deceased was incapable of making a will rendered the further question, whether there was fraud, duress or undue influence, immaterial, though question, as we have seen, was also determined in plaintiff's favor. The plaintiff was sworn as a witness in her own behalf and, without any objection, testified as follows: " Have heard father and Morgan talking together when I had no personal connection with the transaction. Have heard them talking often during the ten years previous to father's death. Heard them talking frequently prior to 1877 for the last two or three

years before that. * * * I remember a time when Morgan and father went to Oneida together. They had not been there together, to my knowledge, for a long time. I hadn't seen them start off together for as much as five or six years. It was in the morning when they started; nearly nine o'clock. It was in the spring. Before they started I heard conversation between Morgan and father, and in which I had no part. * * * They were in the barn. I went to the cistern to get some water. I was only a short distance from the barn. I couldn't say how many rods. The barn is very near the house.

" Q. Were you in sight of them so that they saw you, or were they in the barn out of your sight? A. I could see them there and hear them talk.

" Q. They could see you? A. I think they could if they had looked that way.

" Q. What conversation did you hear between Morgan and your father that morning? "

This question was objected to by the defendant's counsel on the ground, among others, that it was inadmissible under § 829 of the Code of Civil Procedure. The objection was overruled and the defendant's counsel excepted.

" A. They were talking about making a will. I heard Morgan ask him how he was going to make it. I heard father say that he wanted to give me my home there and support, and Morgan said, Give her some money. I did not hear any more. They started for Oneida in a short time. I don't think they were in the house after that before they went to Oneida. When this took place they were standing in the barn. They were doing nothing there. Perhaps ten minutes after that they started right off and went to Oneida. They returned about noon."

It appeared by other testimony in the case that the deceased and his son Morgan went to Oneida together, and that the will was drawn by an attorney at that place on the day it bears date. The ruling of the trial court upon the objection

31

to the above question would present a somewhat important point under the construction which this court has given to § 829 in recent cases, if it could be held that the answers in any degree affect the result. Holcomb *v·* Holcomb, 95 N. Y. 326 ; Matter of Eysaman, 113 Id. 62 ; Matter of Dunham, 121 N. Y. 575.

But we think that the answers to the question as the case now stands were immaterial. If the issue of undue influence and fraud had, as already observed, been found the other way and in favor of the defendant, the result must be the same, so long as it was found, by a separate and independent finding, that the deceased was incapable of making a will. The testimony objected to was not intended to apply to the issue of incapacity, and could not have had any effect whatever upon that question. Indeed, so far as that particular issue is concerned, the testimony was rather favorable to the defendant than otherwise, as it tended to show that the deceased, when about to start for Oneida to procure his will to be drawn, seemed to understand what he was about to do and talked intelligently enough with his son about it, so far as appears from this testimony. With the issue of fraud and undue influence out of the case this testimony might, very prudently, have been given by the defendant. The plaintiff sought to show by this conversation in the barn that the deceased intended to provide a home for the plaintiff on the farm, but, through the influence of Morgan, he was induced to make the will without any such provision and a small money legacy was substituted in accordance with Morgan's suggestion " to leave her some money." For the same purpose it was shown by plaintiff that for many years prior to about the time the instrument was drawn Morgan and his father were on bad terms ; that they frequently called each other names and swore at each other, but a better state of feeling was established between them about the time of the conversation in the barn. As the finding upon the issue of undue influence became wholly immaterial, so the testimony

applicable and directed to that issue only could not, even if objectionable, prejudice the defendant.

The judgment must, therefore, be affirmed, with costs.

All concur.