### WHITE *v.* DAVIS.

*(Supreme Court, General Term, First Department. December 31, 1891.)*

1. APPEAL—REVIEW—HARMLESS ERRORS.
   A judgment for defendant for the excess of certain counter-claims over the amount of plaintiff's claim will not be reversed for error in admission of evidence against plaintiff's claim, it having been allowed in full, or for error in admission of evidence relating to other counter-claims excluded at defendant's request.

2. EVIDENCE—OPINION OF NON-EXPERT WITNESS AS TO SANITY.
   Witnesses not experts can only testify to particular facts tending to show the mental condition of a person whose sanity is in question, and their opinion as to whether the particular words or acts were rational; they should not be allowed to give their general opinion.

3. NEGOTIABLE INSTRUMENTS—PROOF OF CONSIDERATION.
   Loose testimony that the parties to certain promissory notes sometimes exchanged notes is not sufficient proof of want of consideration to overcome the *prima facie* case made by the production of the notes in question in support of a counter-claim thereon.

4. INSANITY—EVIDENCE.
Meager and inconclusive testimony as to sayings and doings of an alleged insane person, which might be attributed to intoxication, there being evidence of his excessive use of alcoholic stimulants, will not justify the submission to a jury of the question of the mental capacity of such person to make and deliver promissory notes.

Appeal from circuit court, New York county.

Action by Pauline M. White, as administratrix, etc., of James White, deceased, against Mary Davis, administratrix, etc., of Richard Davis, for money received on the sale of a market stand, transferred by plaintiff's intestate to defendant's intestate as security for indebtedness which plaintiff alleged had been paid before such transfer. The answer was a general denial and counter-claims on promissory notes, unpaid loans, and moneys paid on account of plaintiff's intestate. The reply denied the counter-claims, and alleged payment, want of consideration, and insanity of plaintiff's intestate. At the trial certain of the counter-claims were excluded from consideration, at defendant's request, and the jury found a verdict for defendant for the excess of the remaining counter-claims over the amount of plaintiff's claim. A motion by plaintiff for a new trial was denied, and judgment for defendant entered on the verdict. From the judgment and the order denying her motion for a new trial, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and ANDREWS, J.

*William J. Lynch, (Abram Kling,* of counsel,) for appellant. *Freling H. Smith,* for respondent.

ANDREWS, J. This action was brought by the plaintiff, as administratrix of James White, deceased, against Richard Davis, and, the latter having died, the defendant, who is his administratrix, was substituted in his place. The cause of action set up in the complaint was for money had and received by said Davis, on account of the sale of a certain meat-stand in Washington market, in the city of New York, which had been transferred to him by White as collateral security for certain indebtedness, after such indebtedness had been paid by White. The answer contained a general denial and set up as counter-claims four promissory notes, given by White to Davis, amounting to $3,133.65; unpaid loans amounting to $1,326; and a payment on account of White of $292.05. The plaintiff served a reply setting up a general denial of the allegations of the counter-claims, and, as further defenses, payment, want of consideration, and the insanity of James White. The action was tried before Mr. Justice BARRETT and a jury, and, after all the testimony on both sides had been taken, the court instructed the jury that, if the indebtedness to secure which the meat-stand had been transferred by White to Davis had been paid before Davis sold the stand, he had no right to sell it, and that plaintiff was entitled to recover the value of the stand, which had been proved to be $3,500, with interest, amounting to $1,260, making a total of $4,760; but the court left it to the jury to determine, on all the evidence, whether such indebtedness had in fact been paid before the sale of the stand. The court also instructed the jury that no defense to the counter-claims set up on account of the promissory notes had been proven, and that the defendant must be allowed the full amount of such notes, with interest. The court also instructed the jury that the defendant must be allowed for one of the loans amounting to $326, with interest, but excluded from the consideration of the jury defendant's counter-claim of $1,092.05. No recovery was asked upon the loan of $1,000. The jury rendered a verdict in favor of the defendant for $257.39, and it is apparent, therefore, that in reaching that verdict, under the instructions of the court, they must have allowed the plaintiff the full amount of her claim of $4,760. A motion for a new trial was made upon the judge's minutes, and denied, and the case now comes before the court

upon an appeal from the judgment entered upon the verdict and from the order denying the motion for a new trial.

The 1st, 2d, 3d, 4th, and 5th exceptions taken by the plaintiff's counsel all relate to evidence taken to defeat the plaintiff's claim, which was allowed in full by the jury, or to counter-claims excluded at the request of the defendant. If any error was committed, therefore, it was cured by the verdict, and did not injure the plaintiff, and consequently such exceptions constitute no ground for a reversal of the judgment. *McGean* v. *Railway Co.,* 117 N. Y. 219, 22 N. E. Rep. 957; *Tenney* v. *Berger,* 93 N. Y. 524.

The plaintiff's exceptions, 6 to 15, inclusive, were all taken to the exclusion of testimony offered by her in support of the defense of insanity set up to the counter-claims. Most of such exceptions were taken during the examination of the witnesses Elsey and Durando. After these witnesses had testified that they met White from time to time during the years 1882 and 1883, plaintiff's counsel, instead of seeking to elicit from the witnesses testimony as to facts relating to White's conduct, endeavored to introduce in evidence the general opinion of the witnesses as to his mental condition. The questions asked and excluded by the court were as follows: "*Question.* From that condition of affairs in which you saw him in, in your judgment was he capable of performing the duties of a business man? *Q.* Will you state what you observed in regard to his mental condition in 1882 and 1883? *Q.* From the conversation that you had with him, did he appear to you like a sane or insane man? *Q.* Will you state what is the condition you observed him in, or what his condition was, from the observations that you made of his mental appearance? *Q.* Will you state what his mental appearance was, from the conversation that you had with him from time to time? *Q.* From his conduct towards you during 1882 and 1883, did you form an opinion as to his condition? *Q.* From the observations arising from your talks with him from time to time, did he appear to you like a person who is capable of taking care of himself?" Each of these questions called for the opinion of the witnesses, who were not experts, as to the general mental condition of White; and it has been settled, by repeated decisions of the court of last resort, that such testimony is inadmissible. A witness, who is not an expert, may be allowed to testify to what a person said or did; and then he may be allowed, if he testifies to remarks made or acts done, to give his opinion as to whether such remarks or acts were rational or irrational; but, even if he testifies to particular words spoken or particular acts done, he cannot then be allowed to go further than to express his opinion as to whether such words and acts were rational or irrational. He cannot then go on and give a general opinion, based upon such words or acts, as to whether the person was or was not insane. Much less can he be allowed, as the plaintiff's counsel sought to have a witness do in the case at bar, to give a general opinion as to the sanity or insanity of an individual, not based upon any facts whatever which are proven in the case. *Clapp* v. *Fullerton,* 34 N. Y. 190; *O'Brien* v. *People,* 36 N. Y. 276; *Real* v. *People,* 42 N. Y. 270; *Hewlett* v. *Wood,* 55 N. Y. 634; *Holcomb* v. *Holcomb,* 95 N. Y. 316. It necessarily follows that none of such exceptions were well taken.

Two other exceptions were taken by plaintiff during the examination of the witness Durando. That witness was asked the question, "What did he say?" and he answered: "He would grab me around the neck, and would want me to go with him, and I was very glad to get rid of him. He acted like a man that was not right." On motion of the defendant's counsel, the last sentence was stricken out as incompetent. The same witness was also asked the following question: "*Question.* In regard to his demeanor, was there anything else than grabbing hold of you, and putting his arms around your neck? *Answer.* He acted kind of queer, and I took him to his door."

On motion of defendant's counsel, this answer was also stricken out. Under the decisions above cited, these answers were clearly incompetent, and no error was committed in striking them from the record.

The plaintiff's counsel also took three exceptions during the examination of Burger and Ackerman, witnesses called on behalf of the defendant. The questions objected to, and which the court allowed to be answered by these witnesses, were as follows: "*Question.* Was there any change in his manner of conduct, or in his acts or conduct, during the time that you were with him? What was Mr. White's manner of conducting business? Did you ever see any or know any change in his manner of doing business?" These questions called for statements by the witnesses of any facts within their knowledge concerning the matters inquired about, and not for opinions. It was held by the general term of this court in *Yeandle* v. *Yeandle*, 5 N. Y. Supp. 535, that questions almost identical were admissible in a case of this character, and the exclusion of such questions was one of the grounds upon which the judgment in that case was reversed. Moreover, as the question of White's sanity or mental condition was not submitted to the jury, the admission of testimony given in response to such question cannot possibly have injured the plaintiff.

The twentieth exception taken by the defendant was to the refusal of the court to permit the plaintiff to go to the jury, and submit to it the following questions: "*First,* as to whether there was any consideration for these notes or moneys alleged to have been paid by the intestate defendant to the plaintiff's intestate; *second,* whether these notes were for mutual accommodation of the plaintiffs and defendant intestate, and without any actual consideration between the said parties; *third,* as to whether the said White, the intestate, at the time of the alleged delivery of these notes, was sane, and in a mental condition to execute and deliver them, and, if insane, that, in that event, the burden of proof is upon the defendant to show the actual consideration or value paid for the notes alleged in the counter-claim. We do not think that the exception taken to the refusal of the court to permit plaintiff's counsel to go to the jury upon these questions was error. The production of the notes by the defendant made out a *prima facie* case, and the burden was then upon the plaintiff to prove, if she could, want of consideration. The plaintiff offered no evidence upon this point, except some loose testimony to the effect that White and Davis sometimes exchanged notes for mutual accommodation. There was no evidence, however, that the notes in question were given in this way; and if the question had been submitted to the jury, and the jury had found against the defendant as to the notes, the verdict would certainly have been set aside, as not based upon any evidence in the case. The loan of the $326 was proven by the uncontradicted testimony of the witness Nelson, and the claim on account of the other alleged loan of $1,000 was withdrawn by the defendant's counsel. So far as the question of White's sanity was concerned, there was no evidence in the case which would have justified the court in submitting that question to the jury. A variety of questions, besides those above mentioned, which were excluded by the court, were put by plaintiff's counsel to the witnesses called by him, and were answered by such witnesses, and some evidence was given as to White's sayings and doings which was competent evidence upon the question of his sanity. Such evidence, however, was meager and inconclusive, and, as there was evidence that White was addicted to the excessive use of alcoholic stimulants, such sayings and doings of White might as well have been attributed to intoxication as to insanity. We do not think the testimony in question would have justified the jury in finding that White was in such a mental condition as not to understand what he was doing when he gave the notes in question, and we think that no error was committed by the court in refusing

to allow the counsel for the plaintiff to go to the jury upon the question of such mental condition. The judgment and order appealed from should be affirmed, with costs.