# CASES REPORTED WITH BRIEF SYLLABI

AND

# DECISIONS HANDED DOWN WITHOUT OPINION.

## THIRD DEPARTMENT, MAY, 1921.

HOWARD B. HUMISTON, Appellant, *v.* MYRON C. WOOD, as Administrator, etc., of NATHANIEL W. CARMAN, Deceased, Respondent.

*Trespass — action to recover damages for breaking into and setting fire to building — evidence tending to show insanity of tort feasor — admissibility.*

Appeal by the plaintiff from a judgment of the Supreme Court, entered in the office of the clerk of the county of Ulster on the 23d of October, 1916, upon the verdict of a jury, and also from an order entered on the 8th day of November, 1916, denying plaintiff's motion to set aside the verdict and for a new trial made upon the minutes.

Judgment and order affirmed, with costs, under section 1317 of the Code of Civil Procedure. All concur, except Kiley, J., dissenting, with a memorandum, in which Woodward, J., concurs.

KILEY, J. (dissenting): The evidence in this case shows, among other things, that the appellant Humiston, prior to 1909, worked for the defendant's intestate, Nathaniel W. Carman. Previous to the year, and in the year above mentioned, Carman was in the undertaking and furniture business at Kerhonkson, Ulster county, N. Y. Appellant had left the employ of Carman and had established a similar business at the same place. Carman was a man nearly seventy years of age at the time the first extraordinary event, hereinafter mentioned, happened. He was angry because of this competition which his former employee had developed against his business. It was a formidable competition and resulted in the practical destruction of Carman's business. He was often heard to say previous to June, 1909, that he would put the appellant out of business and he used other words showing extreme hostility. Those statements are not denied in this record. The appellant rented, for use in his business, a barn in the village of Kerhonkson, of one Lundrigan, in which he kept his horses, his hearses and stock, consisting of caskets, chemicals and other personal property. On June 2, 1909, this building, with its contents, was destroyed by fire. Beyond doubt, this fire was incendiary in its origin. Those who entered a part of the burning building got the odor of benzine or gasoline, saw old sacks saturated with it and there was an explosion of powder; the appellant was burned about the face and head when that explosion occurred. Suspicion pointed toward Carman, but the evidence was such, at the time of the fire

and immediately thereafter, that the verdict of a jury in favor of Carman, as the evidence stood at that time, would not be questioned. Appellant received from an insurance company $1,500; he built up his business again and continued at the same place. I think it can fairly be inferred that Carman's business dwindled to a fraction of what it was before this competing business was established. On the 30th day of January, 1912, in the night time, Carman was caught preparing or attempting to set appellant's building, the same place and business, on fire. He was using the methods and materials that were used to insure a fire on the previous occasion, June 2, 1909; the burlap sacks, gasoline and powder were found in his possession, and to the appellant and in the presence of others who testified upon this trial, he admitted that he set the fire that destroyed the building and contents in June, 1909. Immediately thereafter he denied such admission. The defense was a general denial and that Carman was insane on the last occasion, January, 1912. He was adjudged insane immediately thereafter and sent to an asylum where he subsequently died. Appellant's loss was about $7,000, and, sane or insane, Carman's estate is liable for the loss if he set the fire that destroyed the property. The defense of insanity is not directed toward the fire of June, 1909; the general denial only covers that part of the complaint. The defense of insanity is not urged as a defense to his acts of January, 1912. These are admitted, but the defense of insanity is used to excuse the admission he made that he set the building on fire in June, 1909. This position does not rob the circumstances present in 1912 of their bearing upon the similar circumstances present in 1909. The evidence clearly shows that the same agencies to start and intensify the heat and accelerate the progress of the fire, when once started, were used at the first fire as on the second attempt. The record is mute as to any evidence of insanity shown by Carman previous to this night in January, 1912, when his second and last attempt was made. I use the words " his second and last attempt " advisedly. I think the evidence would sustain the finding that Carman set the first fire; however, the jury found adversely to appellant, and there is much force in the opinion of Mr. Justice Cochrane that the verdict should stand. The question is did the plaintiff in the action have a fair presentment of his case under the circumstances? The jury was practically told that if Carman was insane when he made the admission the verdict should be for the defendant. The situation in which the plaintiff, appellant, found himself was not that of a clash between the truth or falsity of his evidence showing admission of former guilt, but the admission on the part of the defendant of all that was said, and the answer that Carman was insane when he said it; therefore, he could not make a binding admission. This did not wipe out the facts and circumstances that were admitted, the attempt and the agencies used, their identity with the former agencies present at the first fire. These distinctions would have been proper subjects of a charge, and they are important here, on what I regard as error in the admission of evidence. The whole defense turned upon the question of the sanity or insanity of Carman at the time of his admission and subsequent repudiation of such admission. It must be admitted under these circum-

stances small errors may work large results.   I will give one or two examples from the record; there are other similar questions and answers therein. Witness Marshall is on the stand called by defendant:   " Q. Now, Mr. Marshall, from all of the acts, statements, answers and conduct that you have described *and saw that night* by Mr. Carman, did they impress you? A. They did."   Q. How did they impress you, as being rational or irrational?   Objection.   Then follows a whole page of suggestions from the court, and reformed questions by defendant's counsel and the court, and finally the court asked the witness: " Were those acts rational or irrational? "   Objection by plaintiff's counsel, overruled.   " A. Irrational." Again, one Gillespie was called by the defendant, and after defendant's counsel had attempted to ask some questions along the same line, the court asked the following question: " Q. Was his saying that he did set the building on fire, and then denying it, and saying that he did not set it on fire, rational or irrational? "   Objection, overruled.   " A. Irrational."   Both of these witnesses were lay witnesses, non-experts, and there are other instances in the record.   The lay witness can only give his impression; he cannot give an opinion as to sanity or insanity.   From a long line of cases I conceive this to be a proper question: " Taking into consideration the conduct, statements, conversations, and appearance of  *   *   *,  as testified to by you, how did they impress you, at the time, as rational or irrational? "   The questions here enumerated and found in the record do not ask for witness' impression, but were the statements rational or irrational.   It was for the jury to say whether the man was rational or irrational and whether witness' impression was justified by the evidence he detailed and upon which he was supposed to found his impression.   The following authorities have some bearing upon the question here considered: *Holcomb v. Holcomb* (95 N. Y. 316); *People v. Strait* (148 id. 566); *Matter of Myer* (184 id. 54).   If this evidence made any impression upon the jury it was against the plaintiff and doubly so when the court put the questions. I do not think it can be said only harmless error was committed.   Woodward, J., concurs.