Stephen B. Brague, Respondent, *v.* Thomas Lord et al., Executors, etc., Appellants.

This action was brought, among other things, to recover for plaintiff's services as attorney, alleged to have been rendered to L., defendants' testator. The defence was, that the services were rendered for one B. Upon the trial plaintiff was allowed to testify, under objection, that he was introduced by B. to L.; that B. and L. talked of a power of attorney they had given, and that they agreed, on the advice of the witness, to revoke it, which was done; also, that at another time when

L., his brother, and witness were present, L. said to his brother, "we cannot tell what we will have to pay until we know what our lawyer's charges are," turning his head to the witness. *Held,* error; that the evidence was incompetent, it being in regard to personal communications and transactions within the meaning of section 399 of the Code.

(Argued November 23, 1876; decided December 19, 1876.)

Appeal from judgment of the General Term of the Superior Court of the city of New York affirming a judgment in favor of plaintiff, entered upon a verdict, and affirming an order denying a motion for a new trial.

The nature of the action and the facts sufficiently appear in the opinion.

*Charles A. Davison* for the appellants.

*S. Jones* for the respondent. The evidence offered by plaintiff was admissible under section 399 of the Code. (*Simmons* v. *Sisson,* 26 N. Y., 264; *Lobdell* v. *Lobdell,* 36 id., 327; *Cary* v. *White,* 59 id., 336.)

Rapallo, J. This action was brought to recover for services rendered by the plaintiff, who is an attorney at law, to Rufus L. Lord, deceased, the defendant's testator, in relation to the recovery of certain stolen property, and also for part of a reward which had been offered for the recovery and restoration of the property.

The property stolen consisted of bonds and securities, part of them the property of Mr. Lord, and part the property of a Mr. Barron. After the larceny, the plaintiff acted as the attorney for Mr. Barron in the matter, and claims that while so acting, he was introduced by Mr. Barron to Mr. Lord, and, afterwards, acted as attorney for Mr. Lord, and upon his retainer, in the same matter. The defences upon the trial were, that the services rendered by the plaintiff in the matter were rendered on the retainer of Mr. Barron, and not on the retainer of Mr. Lord; and also, that whatever the plaintiff did in the matter for Mr. Lord, was done with the expectation of

earning the reward, and not upon any employment by Mr. Lord nor any understanding that Mr. Lord should compensate him therefor.

The plaintiff introduced evidence of various services rendered by him in the matter, such as the preparation or correction of circulars, drawing affidavits, attending examinations in the Police Court, giving instructions to detectives, attending consultations with Mr. Lord and Mr. Barron, conducting correspondence, etc., etc.; and also, the testimony of detectives that Mr. Lord referred them to him for instructions and information and for the payment of disbursements. He also testified to certain conversations between Mr. Lord and Mr. Barron, at which he was present and in which he took part; and the principal exceptions in the case arise upon the admission of his testimony as to these conversations, the appellants claiming that he was permitted to testify to them in violation of the three hundred and ninety-ninth section of the Code.

The plaintiff was allowed to testify that he was introduced by Mr. Barron to Mr. Lord as his, Mr. Barron's, attorney; that on that occasion Mr. Barron and Mr. Lord talked of a power of attorney they had given, and that they agreed together, on the advice of the witness, to revoke that power — which was done. On a subsequent occasion, the witness testifies to an interview between himself, Mr. Lord, and his brother, Mr. Thomas Lord, at which, he says, the subject of payment for his services arose; that it was during a negotiation as to an amount to be paid in London, and Mr. Rufus L. Lord said to Mr. Thomas Lord, "We cannot tell what we will have to pay until we know what our lawyer's charges are," turning to plaintiff — the three being together — turning his head towards plaintiff. Other conversations at which plaintiff was present, and in which he took part, were testified to by him, he being instructed to state only what was said between Mr. R. L. Lord and Mr. Barron, or Mr. Thomas Lord, as the case might be, and to leave out what was said by or to the plaintiff. Questions are raised in respect to these conversations which are not free from difficulty; but it is sufficient for the purposes

of the present appeal, to pass upon the exceptions taken to the admission of the two conversations above particularly referred to.

We think these exceptions were well taken. Advice given by the plaintiff to Mr. Lord, was a personal communication and transaction between them, within the meaning of the three hundred and ninety-ninth section, and connected with the proof that Mr. Lord accepted and acted upon such advice, the evidence was material, and tended to maintain the issue on the part of the plaintiff. Mr. Lord's remark about what he would have to pay his lawyers, turning towards plaintiff, appears to have been addressed to plaintiff as well as to Mr. Thomas Lord, and may have satisfied the jury that Mr. Lord looked upon plaintiff as his lawyer throughout the transaction, and conceded that he would have to pay him as such.

The remark to Mr. Thomas Lord about paying their lawyers, did not of itself, amount to much. It derived its significance wholly from the alleged turning towards plaintiff, and thus giving him to understand that he was the party referred to. This, we think, was a personal communication, within the intent of the three hundred and ninety-ninth section.

The Superior Court, at General Term, in the opinion there delivered, concede that the admission of this testimony was error, but they hold that it could not have injured the defendants, because there was uncontradicted evidence in the case on which the jury would have been bound, as matter of law, to find for the plaintiff on the issue as to which the conversation of the deceased related.

There was, undoubtedly, evidence outside of these conversations which would have justified the jury in finding that some part of the services rendered by the plaintiff were rendered by him as attorney of Mr. Lord, and on his employment. But there was also evidence tending to show that he was looking to the reward, and that the labor which he performed, or a part of it at least, was performed with the view of earning the reward. In his complaint he claims, in one count, for services rendered, and in the other, the same sum

as his proportion of the reward. It appears by his letter to Mr. Lord, of May 18, 1867, that he undertook a suit against one Lynch, for the recovery of some of the stolen bonds, on condition that if he did not succeed he was to make no charge for his services, and in a subsequent letter relating to the same suit, he proposes to substitute another attorney therein on payment of his costs, stating that in case of recovery he would be entitled to the reward, but he prefers giving a substitution. And it also appears that in May, 1867, Mr. Lord paid him $500, for which he gave a receipt, not on account of services, but to be deducted from the first reward to which he might be entitled. The reward was a certain per centage on all bonds recovered. This evidence tends to show that he had the reward in view, and looked to this contingent compensation for part, if not all, of · his services, the principal item of which was for advice, consultations, attendance, etc. ; while the conversation given in evidence tended to show that Mr. Lord regarded him as his lawyer throughout, and entitled to pay as such. To sustain a verdict when evidence has been erroneously admitted, it must very clearly appear that no injury could possibly have resulted from the error. We cannot see this so clearly as to justify us in upholding the judgment on that ground.

Another insuperable difficulty, however, stands in the way of sustaining this judgment. The plaintiff, as before stated, claims in his complaint a portion of the reward as well as compensation for services. The court, at the trial, after having charged the jury that if the plaintiff undertook the services with a view of receiving a part of the reward offered for the recovery of the bonds, and with that intention alone, the defendants would be entitled to their verdict, further added at the request of the plaintiff's counsel, that even if the plaintiff stood on the reward alone, yet, if the jury found that the bonds were recovered through plaintiff's exertions, he was entitled to recover. The court had refused to charge at the request of defendant's counsel, that the plaintiff had failed to show that the return of the bonds, or any of them, was pro-

cured through the exertions or instrumentality of the plaintiff, and also that he had failed to show any right to recover any part of the reward.

The jury were therefore instructed, in substance, that they might render a verdict for part of the reward. We have carefully examined the testimony and fail to find any evidence upon which such a verdict could be based. It was shown that the greater portion of the bonds had been recovered, but we do not find in the case a particle of evidence showing that the plaintiff brought about such recovery, or was entitled to any part of the reward. The defendants were entitled to have the jury so instructed, and it was error to submit to the jury to determine whether the plaintiff had earned any part of the reward.

The plaintiff appears to have rendered meritorious services, and it is to be regretted that this litigation should be prolonged, the case appearing to have already been twice tried. But the view we take of the legal questions raised requires us to reverse the judgment and order a new trial, costs to abide the event.

All concur; FOLGER, J., in result.

Judgment reversed.