### CONOLLY *v.* O'CONNOR.

*(Supreme Court, General Term, Fifth Department. June 23, 1888.)*

WITNESS —COMPETENCY—TRANSACTION WITH DECEDENT.

    Defendant's intestate having been adjudged to be the father of a bastard child, and required by an order of filiation to contribute to its support, a conversation between him and plaintiff, which constituted the agreement, for its board and care, upon which the action is brought, in which conversation neither the mother nor her legal adviser, though present, participated, is not a personal transaction or communication between the mother and the deceased so as to render her incompetent to testify in regard to it, under Code Civil Proc. § 829, providing that a party or person interested shall not be examined as a witness against the executor, administrator, or survivor of a deceased person concerning a personal transaction or communication between the witness and such deceased person.

Appeal from judgment on the report of referee.

Action by Mary J. Conolly against John O'Connor upon a promise to pay for the care of a bastard child. The defendant died, pending the action, and Mina E. O'Connor, his administratrix, was substituted. The defendant appeals from an adverse judgment.

Argued before BARKER, P. J., and HAIGHT, BRADLEY, and DWIGHT, JJ. *P. M. French,* for appellant. *Wm. E. Edmunds,* for respondent.

BRADLEY, J. The action was brought to recover upon an alleged promise of the defendant's intestate to pay the plaintiff for taking care of and providing for a bastard child of which he had been adjudged the father. An order of filiation had been duly made, requiring him to pay $2.50 weekly to the overseer of the poor so long as the child should remain a charge upon the city of Rochester. On the part of the plaintiff it is claimed that afterwards, in June, 1878, the intestate made an agreement with the plaintiff by which he promised to pay her $2.50 per week if she would take the child, and take care of it, and would also pay her such additional amount for such further things as she should supply to the child beyond the ordinary support and maintenance. The plaintiff is the sister of the mother of the child, and the evidence mainly relied upon to establish such promise was that of the latter, who testified that she was present, and heard the conversation between the intestate and the plaintiff which constituted the agreement. The defendant's counsel objected to this evidence on the ground that it came within the inhibition of section 829 of the Code, and took exception to its reception, and to the refusal of the referee to strike it out. It does not appear that the mother would, in any event, be liable to the plaintiff for the care and maintenance by her of the child, unless it may be inferred from the fact that this supply was furnished with her knowledge. The mother of a bastard child has at common law the duty of its maintenance, and the father can be made chargeable only by proceedings under the statute, although he may charge himself by express promise. *Moncrief* v. *Ely,* 19 Wend. 405; *Birdsall* v. *Edgerton,* 25 Wend. 619. Assuming that the mother would have been liable to the plaintiff if the latter had failed to recover of the defendant, she would be deemed to have had an interest in the event of the action, (1 Greenl. Ev. §§ 390, 393;) and, for the

purpose of the question presented by the exception, we shall assume that the witness had such interest. Her evidence is that she took no part in the conversation had between O'Connor and the plaintiff, and that she was not in any sense a participant in it; that she went to the office of Mr. Cochrane, her legal adviser; that the plaintiff afterwards came there, and O'Connor soon after came; also the overseer of the poor. The business that called them there had some relation to the child, and the performance by him of the order of filiation. While this was a subject in which the mother may have felt some concern, it was, in its legal aspect, a matter between him and the overseer of the poor. This agreement, so far as appears, was a transaction wholly between the plaintiff and O'Connor, in which Cochrane took no part, nor did the witness; and, as she says, she was not treated by them as doing so by acquiescence or otherwise. In that view, it seems to have been exclusively a conversation between the two, and the evidence of the witness would seem to have been competent. *Simmons* v. *Sission*, 26 N. Y. 264; *Cary* v. *White*, 59 N. Y. 336. The fact that the mother was entitled to the custody of the child, and the plaintiff could not, without her consent, take the care and maintenance of it, does not necessarily affect the question, as the witness was not called upon, and did not, at the time of the conversation, in any manner manifest acquiescence in the arrangements there made. The doctrine of *Head* v. *Teeter*, 10 Hun, 548; *Brague* v. *Lord*, 67 N. Y. 495; *Price* v. *Price*, 33 Hun, 69,—does not seem to be applicable to the situation here. There the witnesses personally, or by representatives in their presence, were participants in the communications in question. We think there was no error in the reception and retention of the evidence of the witness. And there is no other question requiring the expression of consideration. The judgment should be affirmed.

Barker, P. J., and Haight and Dwight, JJ., concur.