## DETERMINED IN THE

# FOURTH DEPARTMENT

### AT

## GENERAL TERM,

### April, 1893.

---

JEREMIAH EIGHMIE, Respondent, v. EDGAR B. TAYLOR, as Adminis-
trator of JAMES COLLINGWOOD, Deceased, Appellant.

*Transaction with a deceased person — interest in the event — conversation between the
deceased and a third person in the presence of the witness — error in admission of
evidence.*

68 573,
79 130,
68h 573
76 AD¹448

The disqualification, under section 829 of the Code of Civil Procedure, of a person
interested in the event of the action, to testify in reference to a personal trans-
action with a deceased person, depends entirely upon the facts as·they exist at
the time when the testimony is sought to be given.
If such disqualification exists at the time when the evidence is sought to be given,
it extends to and renders incompetent the testimony of the witness as to trans-
actions which occurred before the witness became interested.
*Semble,* that in probate or other cases, where a will, other instrument, or act, is
contested on the ground of undue influence, restraint, mental incapacity or
fraud, a person who, through being interested in the event, is included in the
provisions of said section 829, is disqualified to testify to a transaction or
communication which occurred in his presence or hearing, although it was not
with or addressed to such person, or one in which he participated.
Upon other issues than those stated above, an interested witness may be per-
mitted to testify to a conversation or transaction between a decedent and a
third person in the presence of the witness, provided he was not referred to
by the parties to such conversation, and did not participate in it by word, sign
or act; but if there was any such reference or participation, although slight,
the witness is incompetent.
In an action brought against an administrator, to recover damages because of fraud
on the part of the defendant's intestate in making a sale, it appeared that the
plaintiff's wife was interested in the event, through having become the owner of

the cause of action; she was offered as a witness on behalf of the plaintiff, and undertook to testify in relation to a material conversation between her husband and the defendant's intestate, which occurred in her presence and hearing prior to her becoming the owner of the cause of action, and in which it appeared she was referred to, and in which she participated to some extent.

*Held,* that the witness was so far referred to and participated in the conversation as to render her evidence incompetent.

The rule applied — that it cannot properly be said that material evidence erroneously admitted upon an issue is harmless, unless the testimony preponderates so greatly in favor of the proposition that a verdict against it would be set aside by the court as contrary to the evidence.

APPEAL by the defendant, Edgar B. Taylor, as administrator of James Collingwood, deceased, from a judgment of the Supreme Court, entered in the office of the clerk of Delaware county on the 17th day of June, 1889, upon the verdict of a jury rendered at the Delaware Circuit in favor of the plaintiff, and from an order made at Special Term and entered in said clerk's office on the 23d day of December, 1889, denying the defendant's motion for a new trial made on a case and exceptions.

On December 31, 1872, the defendant's intestate sold to the plaintiff an interest in certain oil wells situated in Pennsylvania. Subsequently the plaintiff commenced an action against the defendant to recover damages for an alleged breach of warranty made on such sale. A verdict was recovered, which was affirmed at General Term and reversed by the Court of Appeals on the ground that the contract being in writing and containing no words of warranty, no oral warranty could properly be proved. After the decision of the Court of Appeals, the plaintiff obtained an order at Special Term, permitting him to amend his complaint by alleging fraud on the part of the defendant's intestate in making the sale.

An amended complaint was served, the case put at issue and tried, and the jury rendered a verdict for $2,000, which was set aside by the trial justice on the ground that the amount was insufficient. The case again came on for trial, and a judgment was obtained in favor of the plaintiff for $14,980.28, which is the judgment appealed from.

On the last trial, Naomi Eighmie, the wife of the plaintiff and the real owner of the cause of action, was called as a witness and testified that she heard a conversation between Mr. Collingwood,

defendant's intestate, and the plaintiff, at plaintiff's house. She then testified that she saw a letter at that time which the intestate had, whereupon the defendant's counsel said : " I suppose it will be conceded that this lady is the owner of the cause of action." To which the plaintiff's counsel replied : " I suppose it is the fact."

Defendant's counsel then objected to any testimony of any communication by James Collingwood to her or in her presence, or any transaction between the witness and Collingwood, or by Collingwood in her presence. To this objection the plaintiff's counsel replied : " She wasn't then interested in the transaction. It is not the transaction between the parties. Since this action was commenced the cause of action has been transferred to Mrs. Eighmie ; this woman had nothing to do with the transaction at that time." The court then remarked : " And didn't participate in the transaction at all ? " Plaintiff's counsel : " No, sir ; she didn't take any part in it." The court : " If you say she had nothing to do with the transaction, you can go on with the evidence. I will overrule the objection." To this ruling an exception was taken by the defendant.

Subsequently the witness testified : " I heard the conversation at that visit of Mr. Collingwood between him and Mr. Eighmie in relation to the sale of these oil wells. I didn't take any part in that conversation." She was then asked to give the conversation, which was objected to by the defendant, who requested the privilege of asking her a few questions preliminarily, which the court granted. Thereupon, the following evidence was taken as to whether the witness took part in such conversation : " Cross-examination by Mr. BAKER : Q. Who was present during the conversation that you have referred to ? A. Mr. Collingwood and Mr. Eighmie and myself. We were the only persons present during the conversation. Q. Were you present during all the conversation had by Mr. Collingwood on that occasion ? A. Very nearly so all the evening. The fore part of the evening I was in and out of the rooms at various times. Q. Did you talk with Mr. Collingwood while he was at your place ? A. Not on business. Q. Did you talk with him ? A. I entertained him the same as any lady would. Q. You talked with him ? A. Yes, sir. Q. Did you object to your husband's entering into some arrangement with him ? A. Yes, sir. Q. Do you recollect what Mr. Collingwood said to you about your object-

ing to it? A. No, sir; he never said nothing to me; he said it in my presence. Q. Do you remember testifying on the other trial 'I remember what Collingwood said to me; he didn't like it because I objected?' A. Yes, sir; I remember it well. Q. That did take place then? A. I was talking to my husband at the time. Q. You spoke to your husband about it? A. Yes, sir; and then Mr. Collingwood made the remark in the presence of both of us. Q. About your objecting to this bargain or arrangement or whatever it was? A. Yes, sir; he said he never advised with his wife on business matters.

. "DEFENDANT's COUNSEL.— Now we object to any evidence by the witness concerning any personal transaction or communication between her and James Collingwood, and to any testimony or any communication by James Collingwood made to her or in her presence, or any transaction between said Collingwood and witness, or any transaction or act of the said James Collingwood in the presence of the witness.

"THE COURT.— They may wish to examine further.

"Direct-examination resumed: I did not take any part in the talk or transaction between my husband and Mr. Collingwood. Before my husband made any agreement I opposed it. . I spoke to him entirely outside. The remark that was made by Mr. Collingwood was generally directed. Q. The remark that you have given, that he never permitted his wife —? A. He said he didn't consult his wife on business matters. They then went on and had their whole conversation without any further interruption. At that time I had no interest in it excepting the interest of advising my husband. When I speak of having anything to say with him while he was there, it was only in entertaining him as a guest, and was entirely outside and independent of this business talk. When I advised my husband it was when we were in our own room afterward. Mr. Collingwood was not present at the time. It came up afterwards by Mr. Eighmie telling him I had advised him not to. This talk about my advising him came up the morning following the conversation, before Mr. Collingwood went away. At the time of the conversation I had no talk in regard to it.

"Cross-examination by Mr. BAKER: I don't remember that my husband told Mr. Collingwood about my objections in my presence.

Mr. Collingwood did not speak to me directly about it in the presence of my husband. I was not talking to him at the time; but I heard Mr. Collingwood speak of this.

"By THE COURT: Q. I understand that Mr. Collingwood and you and your husband had the talk this evening? A. It was in the morning before he went away. Q. Did Mr. Collingwood and your husband have a talk in the evening? A. Yes, sir. Q. That conversation you took no part in whatever? A. No, sir. Q. Where was this talk you had with your husband when you advised him to let the matter alone? A. It was in our room afterwards. Q. After Mr. Collingwood and your husband had separated? A. Yes, sir. Q. And then the talk by Mr. Collingwood that he didn't advise with his wife, was the next morning? A. Yes, sir.

"PLAINTIFF'S COUNSEL.— It is the talk in the evening we are now offering to show.

"DEFENDANT'S COUNSEL.— We wish to object to any testimony by this witness, on the ground that she is disqualified by her interest under section 829 of the Code.

"By THE COURT: Q. Was the conversation of the night before continued further the next morning? A. Yes, sir. Q. Was there anything else said except what you have stated about your husband telling him what his wife had said, and his saying he didn't advise with his wife? A. Nothing said new from the night before excepting the remark he made. Q. But they did continue and talk about the same matter they had talked about the night before? A. Yes, sir.

"By Mr. CUMMING: Q. Now state whether the conversation, the business conversation, between your husband and Mr. Eighmie was completed during the night prior to the time referred to by you? [Objected to.]

"THE COURT.— She may answer.

"A. Yes, sir. Q. And in the morning do you know how he come to speak of the subject about his not advising with his wife? A. I spoke to my husband, I didn't wish him to go to Elizabeth for fear he would take cold, and that was the remark that Mr. Collingwood made. Q. Do you know why Mr. Collingwood spoke the next morning? A. What I said to my husband was what called out the remark. Q. Do you know whether your husband was

informed — or had informed him that you had objected ; what do you know upon that subject ? A. I don't remember. This conversation was in the morning after breakfast. He left the house with my husband, I think, for the 8:25 train in the morning. It was just before they left that he said he didn't advise with his wife ; just as they were preparing to go. Q. And was there much said about it ; was there any continued or lengthy conversation about the subject that had been talked the night before ? A. No, sir. There is nothing else I remember excepting what I have testified in response to Mr. Baker, that took place in the morning. At this time I was advising my husband not to go on account of his ill-health, and of endangering it. Q. Was that what brought out the talk of Mr. Collingwood, that he never advised with his wife ? A. No, sir, on business — [Objected to as leading.]

" THE COURT.— I think you are leading considerably.

" A. I objected to my husband having anything to do with it, and going out and exposing his health ; that is the way it came up in the morning. In response to that, that was the way Mr. Collingwood made the remark that was addressed to both of us. That was all the conversation that took place in the morning that I can remember.

" Cross-examination by Mr. BAKER : Q. See if I can refresh your recollection on the subject. I will read the testimony on the previous trial : ' Q. You made no objection to the contract or arrangement ? A. Yes, sir ; I objected all through ; I always have objected to it, and I didn't want him to run the risk. I didn't want him to run the risk the same as any wife would, and I didn't want him to have anything to do with the well at all. Q. What risk did you think he might run ; that he might lose on it ? A. Yes, sir ; I had good reason to, he had lost once.' Q. Did you testify to that ? A. Yes, sir ; that was before my husband, but not before Mr. Collingwood. Q. That was the reason you was objecting to it ? A. Yes, sir. Q. And that is the testimony you gave on the previous trial ? A. Yes, sir. Q. ' Did you object the night before ? A. I told you I always objected.' Is that true ? A. I always objected to his going into the oil business.

" Direct-examination resumed : Q. Did you, on the same trial, say you didn't make any of these objections in the presence of Mr.

Collingwood? A. I didn't make the objection in the presence of Mr. Collingwood; in that I refer to the objections I made to my husband privately.

"Cross-examination resumed: Q. Didn't you swear on the other trial, you could not say whether you did or did not, when asked this question: 'In the presence of Mr. Collingwood?' A. No, sir; I didn't say it in the presence of Mr. Collingwood. Q. Wasn't this question asked you (reading from minutes of previous trial): 'Did you in fact object the night before to Mr. Eighmie's purchasing in the presence of Mr. Collingwood? A. I don't know that I did, in the presence of Mr. Collingwood. Q. You won't say either way? A. No. sir.' Q. Is that correct, did you so testify on the other trial? A. Yes, sir; I think I did: I didn't say it in the presence of Mr. Collingwood. Q. Did you testify on the other trial about what I just read to you; did you so testify? A. I think so.

"Direct-examination resumed (reading from testimony of previous trial): 'Q. You won't say either way whether you did or not? A. No, sir; but I don't think I did in the presence of Mr. Collingwood, but I don't remember. I had no conversation the night before directly in reference to the sale matter; Mr. Eighmie does the talking, I don't do any of it; they did the talking the night before; I didn't talk to Collingwood on business, none at all; they were talking it over themselves. Collingwood gave his opinion 'as to what the property was worth quite freely. Eighmie said he would have to take his word for it. I don't remember as Eighmie said he thought Collingwood had estimated it too high. The next morning after Collingwood had left my house, and I talked some about this conversation with my husband, and I talked it over very many times. I didn't talk to my husband that night in Collingwood's presence, I don't remember anything of that.' Q. That testimony was given at the same time with what I have read? A. Yes, sir.

"Cross-examination resumed: That morning they were getting ready to go down to see Mr. English, whose testimony has been read here to-day. He lived about two miles from our place. I don't know if he was an officer of the courts in some form, either a lawyer or a master in Chancery, or both. I was not acquainted with him. I didn't have any understanding on the subject.

" Direct-examination resumed : My husband had been sick and hadn't been out until that morning. Q. And you was anxious about his health and advised him not to go on account of his health? A. Yes, sir. Q. And that was followed by this remark of Mr. Collingwood that he didn't allow his wife to interfere? A. Yes, sir; I don't remember that my husband said anything in particular to Mr. Collingwood the next morning in reference to my advice. I objected to his going out with Mr. Collingwood that morning. They were talking about going down to Elizabeth to have the papers drawn. They were only talking a few moments before breakfast. I don't remember that they talked after breakfast at all. They talked, if I remember, about having their papers drawn, and where to go in Elizabeth. Nothing was said about the terms of the papers that morning; that was spoken of after he came home. I think my husband said to Mr. Collingwood that he always advised with me. That was all that was said in reference to that when I objected to his going; I objected before Mr. Collingwood, in his presence. I objected to his going to Elizabeth in the morning, and he said he always advised with his wife. Collingwood said he never advised with his wife on business matters. That was all that was said about advising with me, as near as I can recollect."

After this preliminary examination of the witness, the court overruled the defendant's objection. To which ruling the defendant excepted. The witness was then permitted to testify fully as to the conversation and transaction had between the plaintiff and the defendant's intestate, which was the subject of this action.

*Thompson & Lown,* for the appellant.

*Alex. Cumming,* for the respondent.

MARTIN, J.:

The first and most serious question presented on this appeal is, whether the court properly admitted the evidence of the plaintiff's wife, as to the conversations and transactions which took place between her husband and the defendant's intestate, she being the real party in interest. When this evidence was offered, she was clearly interested in the event of the action. The respondent contends that as she was not interested when the conversations and transactions

occurred, she was competent at the time of the trial. We find no authority sustaining this claim. It was held in *Comins* v. *Hetfield* (80 N. Y. 261), that the disqualification under section 399 of the old Code, depended entirely upon the facts as they existed at the time when the testimony was given.

In *Farnsworth* v. *Ebbs* (2 Hun, 438, 440), it is said : "The test of the prohibition, contained in section 399 of the Code, is not whether the interests of the witness were the subject of the transaction or communication. Cases will often arise when a witness cannot be permitted to testify to a transaction or communication in which he had at the time no interest. For example, when an admission has been made, respecting property of which the witness afterward became the owner; or when the witness acted for another in a transaction, in the subject of which he afterward acquired an interest." See, also, *Wooster* v. *Booth,* 2 Hun, 426 ; *Andrews* v. *Nat. Bank of North America,* 7 id. 20 ; *Hadsall* v. *Scott,* 26 id. 617 ; *Church* v. *Howard,* 79 N. Y. 415, 420 ; *Miller* v. *Montgomery,* 78 id. 282. The rule must be the same under section 829 of the present Code, and the witness was, we think, incompetent to give any evidence which was within the inhibition of that section.

This leads to the consideration of the question whether she was competent to. give evidence of the transaction and conversations which were the basis of this action. The authorities bearing upon this question are somewhat in conflict, and it may be well to examine some of the principal cases to the end that we may, if possible, ascertain the rule that should be applied in this case.

In *Simmons* v. *Sisson* (26 N. Y. 264), it was held that section 399 of the old Code did not prohibit a party sued by an administrator from testifying to a conversation heard by him between the deceased and a third person.

This case was followed by *Cary* v. *White* (59 N. Y. 336), where it was held that under section 399, a party was not precluded by that section from testifying to statements made by a deceased person to a third party, although the witness participated in the conversation, so long as his testimony was limited to what was not personal between him and the deceased. The doctrine of that case when applied to a conversation in which the witness did not join, was

reaffirmed in *Hildebrant* v. *Crawford* (65 N. Y. 107). The opinion of the court in the latter case was to the effect that a party might testify to a conversation heard by him, between a principal and agent, who were both dead, as against a successor in interest of the principal. The doctrine of those cases was again recognized in *Badger* v. *Badger* (88 N. Y. 559), limited, however, to conversations in which the interested witness took no part.

In *Holcomb* v. *Holcomb* (95 N. Y. 316, 325), in discussing this question, it was said : " The words of exclusion are as comprehensive as language can express. Transactions and communications embrace every variety of affairs which can form the subject of negotiation, interviews or actions between two persons, and include every method by which one person can derive impressions or information from the conduct, condition or language of another. The statute is a beneficial one and ought not to be limited or narrowed by construction. Although it must appear that the interview or transaction sought to be excluded was a personal one, it need not have been private or confined to the witness and deceased. If they participated, it does not change its character because others were present. A contrary rule would defeat the reasonable intent of the statute that a surviving party should be excluded as one interested from maintaining by his testimony an issue which in any degree involved a communication or transaction between himself and a deceased person," and the case of *Cary* v. *White* (59 N. Y. 336) was again under consideration, and it was there said : " In the case of *Cary* v. *White* the court regard it as settled that the provisions of the Code (§ 399) there under consideration, and which were not unlike those now in force (§ 829), do not preclude a party from testifying to the statement of a person deceased, made to a third person in the hearing of a witness." But Judge DANFORTH in the opinion in that case subsequently adds : " If while the decedent is conversing with a third person, the witness by word or sign participates in it, or is referred to, his evidence of what occurred cannot be received."

In *Lane* v. *Lane* (95 N. Y. 494, 502), in discussing this question, it was said : " Something may have occurred by word or act in the presence of the testator, and between him and others, to which she (the testator's wife) was not a party, and of which she could testify,"

citing *Cary* v. *White* (59 N. Y. 336); *Kraushaar* v. *Meyer* (72 id. 602). In the latter case it was held that although a party was not incompetent under section 399 of the old Code to testify to an independent conversation between the deceased and a third person, yet, if he participated in the conversation and it related to a transaction between him and the deceased, he was incompetent.

In *Brague* v. *Lord* (67 N. Y. 495), where, in a conversation between the decedent and another, in the presence of a witness, who was disqualified under section 399, and the statement proved appeared to have been addressed to the plaintiff as well as the other, indicated only by his turning towards the plaintiff when the statement was made, it was said that the witness was incompetent, and the admission of the evidence was error.

In *Simmons* v. *Havens* (101 N. Y. 427, 433), the plaintiff was allowed to testify to conversations between her deceased mother and the defendant, at which she was present, but it did not appear she took any part in the conversation, and the admission of her evidence was held proper, and sustained by the case of *Cary* v. *White* (59 N. Y. 336), thus substantially reaffirming the doctrine of that case, as limited in the preceding cases to conversations between a decedent and a third person, in which she took no part.

In the *Matter of Eysaman* (113 N. Y. 62), where the probate of a will was contested on the ground of want of testamentary capacity on the part of the testator, it was held that a witness who was not competent under section 829, was not only not competent to testify as to transactions directly between the witness and the deceased, and communications by the latter to the former, but was disqualified to testify to any transactions between the deceased and others in any portion of which the witness participated, or any conversation in his hearing, although not with, or addressed to, him. In the opinion in that case, it is said that the case of *Cary* v. *White* (59 N. Y. 336) is not an authority for the admission of such evidence. In discussing that case, RUGER, Ch. J., criticises it as follows : " Several grounds for the conclusion reached in that case were stated, but a single judge, only, concurred with the opinion ; two judges concurred in the result and two dissented, the remaining judge not voting. One of the grounds suggested in that case was that the party objecting to the evidence offered was not an assignee of the deceased person within

the meaning of the statute. The evidence there sought to be given consisted of a declaration made by the deceased person to his own attorney in the presence of the plaintiff. The point was presented upon an objection to the question calling for the evidence, which was sustained by the trial court. The judge who wrote in this court was of the opinion that the question excluded did not necessarily relate to a personal communication or transaction between the deceased person and the witness, and was, therefore, competent. The case cannot be considered an authority upon the question here presented."

In the *Matter of Will of Dunham* (121 N. Y. 575), where the probate of a codicil to a will was contested on the ground of undue influence, restraint and mental incapacity, a residuary legatee was called by the contestants, who offered to prove by him conversations and transactions of the testator with the witness and others in his presence. The evidence was excluded. The Court of Appeals held that the evidence was inadmissible. In the opinion in that case it is said: "The object of the proposed evidence could only have been to show undue influence, or restraint, exerted upon the deceased, or his mental incapacity. * * * Therefore, while, as to any communications or transactions with the witness, the proposed evidence was plainly enough inhibited by section 829 of the Code, his testimony as to the conversations, or transactions, while he was present in the room, had between the deceased and other persons, was, under the circumstances, inadmissible," citing the cases of *Holcomb* v. *Holcomb* (95 N. Y. 316) and *Matter of Eysaman* (113 id. 62), and then it is said: "The ground for the ruling is that communications in the presence of the witness are deemed to be made to him. While the ruling may be said to be stretched to the extremest tension it has the merit, possibly, of being in furtherance of justice. The evidence is intended to work here against the respondent, who derives her interest under the testator's codicil, and whose lips are sealed by the law as to the matters; and to permit a witness so much interested as this one was in the amount of the estate ultimately distributable, to testify to things said and done by testator, though with others, but while he was present, with the only supposable purpose of affecting the interests of the respondent, would certainly seem to be giving an undue advantage to the one as against the

other. This is certainly true, if the evidence sought to be elicited is material in its bearing upon the question of restraint or influence upon the testator, or upon his disposing strength of mind. * * * This section of the Code offers considerable difficulty in the endeavor to give to its provisions a reasonable and just interpretation, and each case, as it arises, may, in its circumstances, control the application of the rule intended to be established by the Legislature."

In *Devlin* v. *The Greenwich Savings Bank* (125 N. Y. 756), which was, in effect, an action to establish a gift *causa mortis,* the plaintiff offered to prove that she was present at a conversation between her uncle, through whom she claimed, and a Catholic priest. This evidence was objected to and excluded. It was held that inasmuch as there was nothing to show that she could testify to any fact that was material, it did not appear that any injury resulted from the ruling. Judge PECKHAM, who wrote the opinion, then added: " It is doubtful if the witness could be permitted to testify as to a conversation in her presence between her uncle and Father Carew relative to the gift she claimed. The cases of *Esyaman's Will* (113 N. Y. 62), and *Dunham's Will* (121 id. 575), have very greatly limited the old rule in regard to such conversation."

In the case of *Petrie* v. *Petrie* (126 N. Y. 683), where the validity of the will of Nicholas H. Petrie was the only disputed question, the plaintiff was permitted to testify to a conversation she overheard between her father (the testator) and her brother Morgan, in which the latter urged his father to change the disposition he intended to make for the benefit of the plaintiff. This testimony was objected to as incompetent, under section 829 of the Code of Civil Procedure. Upon that question the court said: " The ruling of the trial court upon the objection to the above question would present a somewhat important point under the construction which this court has given to section 829 in recent cases, if it could be held that the answers in any degree affected the result," citing *Holcomb* v. *Holcomb* (95 N. Y. 326); *Matter of Eysaman* (113 id. 72); *Matter of Dunham* (121 id. 575). But the court held that the evidence was harmless. In discussing that question the court adds: " With the issue of fraud and undue influence out of the case this testimony might, very prudently, have been given by the defendant."

In *Adams* v. *Morrison* (113 N. Y. 152), where the question was whether the plaintiff was a partner with his deceased father, the plaintiff offered to prove by his own testimony that about the time he claimed the partnership was formed the decedent made an entry in his presence in a docket or register, of the name of himself and the plaintiff as a firm. This was objected to as incompetent under section 829 and excluded. The court held that it involved a personal transaction between the decedent and the witness, and that the plaintiff was incompetent, citing *Holcomb* v. *Holcomb* (95 N. Y. 316); *Clift* v. *Moses* (112 id. 426); *Matter of Eysaman* (113 id. 62).

In the following cases, it was held that an interested witness may testify to a conversation between a decedent and a third person, in which the witness did not participate : *Stern* v. *Eisner* (51 Hun, 224); *Smith* v. *Ulman* (26 id. 386); *Matter of Brown* (38 N. Y. St. Repr. 130); *Conolly* v. *O'Connor* (17 id. 261; affirmed, 26 id. 840), but upon the ground that the witness was not interested in the event of the action.

In *Price* v. *Price* (33 Hun, 69), which was an action by the plaintiff to recover the proceeds of bonds which were alleged to have been placed by her in the hands of the defendant's testator for safe-keeping, and which had been subsequently sold by him, the plaintiff testified that she had $12,000 in bonds in her trunk on or before March 25, 1865 ; that on the morning of that day, five $100 bonds were stolen ; that the testator came to her room after the discovery of the theft, with a detective, who, after examining the room, said to the testator that the theft had not been committed by a professional thief ; that if it had been, he would have taken all the bonds. The plaintiff was then allowed, under the defendant's objection and exception, to answer the following question : " What did Price (defendant's testator) say to Bennett (the detective) in your presence ? " Her answer to which was : " No, of course ; if it had been, they would have taken all of them; whereas here is the balance of the $12,000 in my pocket. He took them out of his pocket and exhibited — took them from the envelope they were in. ' But,' he said, ' they won't get any more, because I am going to put them into a bank for her,' meaning me." She testified that she spoke more than once during the conversation, but that she said nothing while the remarks as to which she had testified were being made.

It was held that the testimony was inadmissible under section 829 of the present Code.

In *Erwin* v. *Erwin* (26 N. Y. St. Repr. 759), which was an action for specific performance of a parol agreement of a deceased person to convey land to the plaintiff, the plaintiff's wife, who was interested in the event of the action, was present when the agreement was made. The conversation was between the decedent and plaintiff. His wife said nothing, as deceased did not like her, and she was afraid that if she spoke he would be angry and oppose the arrangement. It was, however, held that she was incompetent to testify as to the conversation or transaction between the decedent and her husband. (See, also, *Campbell* v. *Maginn*, 53 Super. Ct. Rep. [21 J. & S.] 514; *Matter of Bartholick*, 35 N. Y. St. Repr. 730.)

Having thus examined the principal cases in the Court of Appeals, and the later ones in the other courts of this State, bearing upon the question under consideration, we think they clearly establish the rule that, in probate or other cases where a will, other instrument or act is contested on the ground of undue influence, restraint, mental incapacity or fraud, a person who is interested in the event of an action or proceeding, is disqualified to testify to any transaction or communication which occurred in his presence or hearing, although it was not with or addressed to such person, or one in which he participated. It also seems to be established by these cases that, upon other issues, an interested witness may be permitted to testify to a conversation or transaction between a decedent and a third person in the presence of the witness, provided he was not referred to by the parties to such conversation, and did not participate in it by word, sign or act, but if there was any such reference or participation, although slight, the witness is incompetent.

Applying these rules to this case, it becomes obvious, we think, that the evidence of Mrs. Eighmie was incompetent. The issue in this case was fraud. The witness admits that she talked with the decedent and her husband on the occasions of the conversation or transaction testified to by her, and was referred to in the conversation between them. But she seeks to qualify herself as a witness by testifying that her conversation in no way related to the transaction between them, and that her objections to her husband's entering into

it were made in the absence of the decedent, and to her husband alone.   Yet, when we read the whole of her evidence bearing upon this question, which was somewhat conflicting and uncertain, and indicates the existence of a strong desire on her part to qualify herself as a witness, we are led irresistibly to the conclusion that she was so far referred to and participated in the conversation or transaction between her husband and the decedent, to such an extent as to render her evidence incompetent within the principle of the cases cited, notably the cases of *Brague* v. *Lord* (67 N. Y. 495);   *Price* v. *Price* (33 Hun, 69) and *Erwin* v. *Erwin* (26 N. Y. St. Repr. 759).   We think the court erred in admitting her evidence, and that for that error the judgment should be reversed.

The plaintiff's contention that the admission of this evidence was harmless, as there was other evidence sufficient to justify the verdict, cannot be sustained.   The evidence given by the witness was material and bore directly upon the issue between the parties.   " It cannot properly be said that material evidence erroneously admitted upon an issue is harmless, unless the testimony preponderates so greatly in favor of the proposition that a verdict against it would be set aside by the court as contrary to the evidence." (*Matter of Eysaman*, 113 N. Y. 70, 71.) It is clear that if we adopt the rule laid down in the case cited, it cannot be held that the error of the court in admitting this evidence was harmless.

There are other exceptions as to the admission of evidence and the charge of the court, to which our attention is called by the appellant's brief, but as the judgment must be reversed for the reasons already stated, they need not be considered at this time.

Judgment and order reversed on the exceptions, and a new trial ordered, with costs to abide the event.

HARDIN, P. J., concurred ; MERWIN, J., concurred in the result.

Judgment and order reversed on the exceptions, and a new trial ordered, with costs to abide the event.