### GRISWOLD et al. v. HART.

(Supreme Court, Appellate Division, Third Department. January 4, 1911.)

1. WITNESSES (§ 146*)—COMPETENCY—TRANSACTION WITH DECEASED PERSONS.
   Under Code Civ. Proc. § 829, a surviving husband is incompetent to testify to a gift to his deceased wife by a deceased donor by testifying as to what took place between the donor and the wife at the time of the gift, though he said nothing and was not referred to in any way. (Per Kellogg, Houghton, and Sewell, JJ.)
   [Ed. Note.—For other cases, see Witnesses, Cent. Dig. §§ 644–649; Dec. Dig. § 146.*]

2. GIFTS (§ 49*)—INTER VIVOS—EVIDENCE.
   Evidence held to justify a finding of a gift inter vivos. (Per Smith, P. J., and Cochrane and Sewell, JJ.)
   [Ed. Note.—For other cases, see Gifts, Cent. Dig. §§ 95–100; Dec. Dig. § 49.*]

Appeal from Trial Term, Chemung County.

Action by Eliza E. Griswold and another, administratrix and administrator of Oscar F. Ridgeway, deceased, against Louisa B. Hart, administratrix of Fred C. Hart, deceased. From a judgment for defendant and from an order denying a motion for a new trial, plaintiffs appeal. Judgment and order reversed on the law, the facts having been examined and the conclusion thereon approved.

Argued before SMITH, P. J., and KELLOGG, COCHRANE, SEWELL, and HOUGHTON, JJ.

Baldwin & Allison, for appellants.

Herendeen & Mandeville (E. W. Personius, of counsel), for respondent.

SMITH, P. J. This action is brought by the administrators of one Oscar F. Ridgeway to recover from Fred C. Hart, a son-in-law of said Ridgeway, certain certificates of deposit and a book in the Elmira Mechanics' Society, which were in the possession of said Hart at the death of said Ridgeway. Hart claimed the right to the possession of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

these evidences of indebtedness by virtue of a gift claimed to have
been made to Hart's wife, who was the daughter of said Ridgeway,
on August 29, 1908. This daughter died suddenly upon September
11, 1908, and Mr. Ridgeway himself died upon November 4, 1908.
The gift was sought to be established primarily by the evidence of
Hart himself. He swore that upon the day of the gift Ridgeway was
taking dinner with him and his wife. After the dinner, and after they
had passed into the living room, while he was putting on his coat pre-
paratory to departing, he swears that his father-in-law took a paper
from his pocket and handed it to his wife, saying, "This contains my
certificates of deposit and loan book, and I give them to you. Take
them, they are yours." He swears that this was all that was said;
that he himself did not say a word, nor was he referred to in any way;
that his wife took the paper, put it in a drawer in a desk, and some
time afterward gave it to him, and he took it and put it in a safe of
his employer, where it remained until after the death of Ridgeway.

The first question to be considered is the competency of this evi-
dence. If Hart were not competent to swear to this transaction, then
there is no evidence of any gift and the judgment is wrong. In Cary
v. White, 59 N. Y. 336, it was held that the section of the Code of
Procedure (399), which is the same as the present section (829), "does
not preclude a party from testifying to statements made by a deceased
person to a third party; and this is so, although the witness partici-
pated in the conversation, so long as his testimony is limited to what
was not personal between him and the deceased." Now this rule has
been criticised at times, and has been limited. It has never been over-
ruled. It is recognized in O'Brien v. Weiler, 140 N. Y. 286, 35 N. E.
587. In Hutton v. Smith, 175 N. Y. 382, 67 N. E. 635, the court dis-
tinctly recognizes the rule with certain limitations. The court says
of the rule:

"It has now been limited to this extent at least that all conversations or
transactions between persons since deceased and a third party in the pres-
ence or hearing of the witness may not be testified to by such witness if he
by word or sign participated in the transaction or conversation or is referred
to in the course of it, or was in any way a party to it."

In Lawyer v. White, 198 N. Y. 323, 91 N. E. 842, Judge Gray in
writing for the court says:

"For some time, it was doubted how far its provisions extended to such
cases as where a person offered to testify to conversations, or transactions,
between persons since deceased and a third person in the presence, or hear-
ing, of the witness. It was, finally, held that they might not be testified to
by such witness, if he participated in the transaction, or conversation, or was
in any way a party to it, by reference, or otherwise."

In Hutton v. Smith, 175 N. Y. 375, 67 N. E. 633, that question was
considered and the cases reviewed. As far as the cases stand to-day,
therefore, a party interested in the event may testify to a conversation
between the deceased and a third party in which he did not partici-
pate, to which he was not a party and in which he was not referred
to. Within that rule the evidence of Hart was to my mind clearly
competent. This conversation occurred after they had gone from the

dining room to the adjoining room, after Hart had separated himself from his wife and his father-in-law, and was putting on his coat preparatory to departure. It was a transaction purely between the father-in-law and the witness' wife, in which he at the time had no interest whatever, to which he was not a party, and in which he was in no manner referred to.

Assuming, then, the competency of this evidence, a more serious question to my mind arises as to the weight of evidence upon the question as to whether this gift was one causa mortis or one inter vivos. If the gift were one causa mortis the death of the donee prior to the death of the donor revoked it. Otherwise, if the gift were one inter vivos.

Upon this question the jury has found with the defendant, after a charge which stated the rule fully as strong as the plaintiff could ask. It was pointed out in what cases the presumption was in favor of the fact that the gift was causa mortis, and the burden of proof was placed upon the defendant to show that it was an absolute gift. It was evidently contemplated by the trial justice in denying the motion for a new trial that the question was a close one, upon which the verdict of the jury must control.

There are two or three facts which lead me to the conclusion that we ought not to interfere with the verdict of the jury: First. The most important fact is that for nearly two months after the death of the daughter the envelope containing these securities was never demanded by Ridgeway. It does not appear that he ever knew that Hart had them in the safe. If the property had been given to his daughter as a gift causa mortis he would clearly have sought them out and taken them back after her death. This he never did. Of course his evidence is not before the court, but it is inconceivable that if this were such a gift as was claimed by the plaintiff, that he should not have demanded of Hart the return of these securities during those two months after the death of his daughter and prior to his own death, and taken them back from Hart.

Second. Among his papers afterwards found in his room was an envelope similar to the one in which these securities were enclosed when given to the daughter. Upon that envelope was marked, "In care of F. C. Hart." That envelope was dated October 6, 1907. In the envelope, however, in which these securities were inclosed was no such indorsement. If it had been intended to put them in her charge for him, or in charge of F. C. Hart for him, why was this indorsement omitted from the new envelope in which the securities were handed over to her. This seems to me a significant fact as showing that the property was handed as a gift; perhaps not significant, however, upon the question as to whether the gift was inter vivos or causa mortis. By disinterested evidence it is shown that this envelope was deposited in the safe of Friend & Metzger, where the defendant Hart worked, soon after the date of the alleged gift; and there is no evidence that at any other time any other envelope was put in that safe for Hart.

It is true that there are facts from which inferences might be drawn by the jury to the contrary. This was practically all the property that

this man had, nevertheless he was working right up to his death, and received his regular wages from the railroad company, which were abundant to support him. The witness Huntington, almost as much interested as the witness Hart, swears that Hart said that his father-in-law had given his property to his wife and had told her in substance' that she must take care of him in his old age if he needed it. It is claimed that this is not denied by Hart. If this declaration were made by Hart, however, it is evidence of a gift inter vivos and not of a gift causa mortis, as it is evidence of an agreement between him and his daughter that in consideration of the gift she would take care of him in his old age. It is claimed that he stated to a servant of the person who was furnishing him his board before his death, which occurred upon the 4th of November, that his interest was coming due very soon and that when he drew it he would pay his board. But this is not sworn to by the person to whom he said it, but the woman who furnished the board said that her servant told her that he made some such statement. But the interest on the certificates of deposit did not come due until about the 23d of December, two months off, while his wages from the railroad company came due about the middle of November, and this was undoubtedly the fund to which he was referring in case he made any such remark to the servant, which is only proven by hearsay testimony. There is evidence of declarations that he made to the effect that he had given this property to his daughter and that he had arranged his affairs, to which I do not give very much significance.

Again, it is a close question whether this can in any event be considered as a gift causa mortis. In 3 Pomeroy's Equity Jurisprudence, § 1146, a gift causa mortis is defined as "a gift absolute in form, made by the donor in anticipation of his speedy death." At page 2231 the author continues, "Such a donation may be made by a donor who anticipates his speedy death because he is suffering at the time under an attack of severe illness which he supposes to be his last, or because exposed to peril." It may be that this statement is a little broad, but there is no question that to constitute a gift causa mortis a donor must be suffering in his last illness and be anticipating a death not far distant. The illness from which he was suffering was Bright's disease and hardening of the arteries. There seems to be no question that men survive years with such ailments. He had a slight attack in June, apparently of overexhaustion, but was not sick in bed. He went to a hospital for two weeks after his daughter died, but this was because his housekeeper had left the house and he would have been in the house alone; but while at the hospital he had no medicines, did not stay in bed at all, and simply made it his home. The evidence is very scant of any such conditon of health on his part, or of any apprehension on his part of speedy death, from which can be inferred an intention to make a gift causa mortis, or the right to have a gift actually made so construed, and not at all sufficient in my judgment in view of the fact that for two months after his daughter's death he made no retraction of the gift, and never attempted to take possession in any way of these securities which he had given to her.

This case was decided by a jury. Hart himself was before the jury and testified fully to the transaction. The jury could tell whether he was telling the truth. It may be that Ridgeway cared a great deal more for Hart than he did for his other relatives, and the fair inference is that he was perfectly willing to trust his future to his daughter and to Hart, and to trust to them for any care that he might need, in case he should be unable to work up to the time of his death.

I recommend, therefore, that the judgment and order be affirmed, with costs and without opinion.

Judgment and order reversed on the law, the facts having been examined and the conclusion thereon approved, with costs to appellant. COCHRANE, J., concurs in opinion of SMITH, P. J. SEWELL, J., concurs in opinion of KELLOGG, J., as to the law, and in opinion of SMITH, P. J., as to the facts.

JOHN M. KELLOGG, J. (dissenting). If, while the father was being entertained by his daughter and her husband at the dinner table, he had made this alleged gift to her, it could not be seriously contended that the husband was not a party to the transaction. The fact that he swears that it did not occur then, but did occur as they were going out of the dining room and while he was putting on his coat, is not material. The statute is to prevent perjuries, based upon the theory that where one party to the transaction is dead the other party cannot be trusted to give a material conversation with him. The policy of the law equally well prohibits a husband, who with his wife is entertaining her father, from separating himself from them by his testimony and swearing to beneficial gifts given by him to her in his presence. In my judgment he was a party to the transaction, as he is to the action, and is an incompetent witness. The fact is he is now swearing in his own behalf against her father's estate, her father being dead. We are not discussing the question whether if she were living and he could derive no benefit from the gift, he would be competent or not. But the fact is, at the time he was sworn, no person in existence but himself was interested in the gift, and it is familiar law that the competency of a witness is determined by the situation at the trial, and not by the situation existing at the time the transaction sworn about takes place. He was a bookkeeper, and necessarily more or less acquainted with business transactions. He knew that the securities would not be fully available to his wife unless transferred. If the gift actually took place, and he is honest about it, he would have been the first one to see that the securities were legally transferred by proper indorsements. I think the same suspicion surrounds this evidence that surrounds every claim made against the estate of a deceased person which rests entirely upon the evidence of interested parties. In all such cases it is fair to assume that the witness is trying to swear the property of the estate into his hands, and that his evidence is colored and made unreliable thereby. It is not probable that the father intended to divest himself permanently of all his property and make himself in his ill health practically a charge upon the bounty of others or the public. I favor a reversal of the judgment upon the law and the facts.

HOUGHTON, J. (concurring). Irrespective of the merits of this action I think the judgment must be reversed because of error in permitting the then defendant, Fred C. Hart, to testify to what took place between the plaintiff's intestate and his daughter at the time of the alleged gift of the moneys in question. The defendant's wife, Helen, was the only child of Oscar F. Ridgeway, the plaintiff's intestate, who shortly before his daughter's death, which occurred shortly before his own, held certain certificates of deposit and a bank book which the defendant Hart claimed to own and which this action was brought to recover. The defendant Hart's alleged title came through the death of his wife who died intestate and without children. The wife's title depended upon whether or not her father, the plaintiff's intestate, made a valid inter vivos gift of the moneys to her. The certificates were not indorsed and stood in the name of Ridgeway, as did the bank book, and the validity of the gift depended upon actual delivery with appropriate words to pass title.

Against the objection of the plaintiff that he was disqualified under section 829 of the Code, the defendant Hart was permitted to testify that he was present at an interview between the father and the daughter at which the father addressed the daughter and handed her an envelope containing the certificates and the bank book and said:

"This contains my certificates of deposit and loan book and I give them to you. Take them; they are yours."

This of course was most material evidence upon a most vital point.

It is conceded that the defendant was interested in the event of the action and that he was an interested witness, but it is sought to justify his testimony on the ground that he did not participate in the conversation, and hence that it was not a transaction or communication which he himself had with the deceased, concerning which he was disqualified to speak; and, further, that at the time it occurred he had no interest in the subject-matter and was a mere disinterested third party, because such interest as he had came to him subsequently through the death of his wife. I do not think the testimony can be justified on this ground. The testimony which the defendant gave supplied the necessary link in his chain of title and related to a matter which the alleged donor if alive could dispute. It must be conceded that the spirit of section 829 was violated, and, as I interpret it, the letter was also violated. While the phraseology of section 829 of the Code has been changed from time to time its intent has always been, since its first enactment as section 399 of the old Code, to prohibit a party or person interested in the event of an action from testifying against the personal representatives of a deceased person, to a personal transaction or communication had with one whose lips were closed by death. All courts have aimed to interpret the statute to meet this intent. Various situations have led to various expressions in the decisions of the courts, some of which confessedly conflict with others. One of the most difficult problems respecting the section has always been to determine what constituted a transaction or communication, and whether or not it was had with the proposed witness. Decisions can be found stating the broad proposition that if an interested person be a mere bystander, not

participating in the conversation or transaction, he may testify to it. The weight of authority as well as of reason, it seems to me, is that where an interested party is present at a communication or transaction had between the deceased and another, relating to the transfer of property to himself, immediately or contingently, such interested party cannot be regarded as a mere bystander, and that because of his interest the transaction or communication must be deemed to have been had with him.

The earliest case to which my attention has been attracted holding, in effect, this proposition, is that of Waver v. Waver, 15 Hun, 277. That case involved a gift to one for distribution amongst others. One of these ultimate beneficiaries was held incompetent to testify to the transaction between the donor and the donee, although he took no part and was a mere onlooker. The same holding was made in Price v. Price, 33 Hun, 69.

In Erwin v. Erwin, 54 Hun, 166, 7 N. Y. Supp. 365, the wife of the donee, who might take dower, although she expressly refrained from taking any part in the conversation because the donor was unfriendly to her, was held incompetent to testify to a conversation between the deceased donor and her husband, the donee.

In Matter of Palmateer, 78 Hun, 43, 28 N. Y. Supp. 1062, the daughter of an alleged testator, because of her interest under his will was held incompetent to testify to a conversation between her father and mother in which she took no part.

In Eighmie v. Taylor, 68 Hun, 573, 23 N. Y. Supp. 248, Martin, J., made an exhaustive review of the decisions relating to section 829 and concludes from them "that in probate or other cases where a will, other instrument or act is contested on the ground of undue influence, restraint, mental incapacity or fraud, a person who is interested in the event of an action or proceeding, is disqualified to testify to any transaction or communication which occurred in his presence or hearing, although it was not with or addressed to such person, or one in which he participated. It also seems to be established by these cases that, upon other issues, an interested witness may be permitted to testify to a conversation or transaction between a decedent and a third person in the presence of the witness, provided he was not referred to by the parties to such conversation, and did not participate in it by word, sign or act, but if there was any such reference or participation, although slight, the witness is incompetent."

The controversy in Ditmars v. Sackett, 92 Hun, 381, 36 N. Y. Supp. 690, was concerning personal property covered by a chattel mortgage, the defense to which was usury. Bradley, J., concludes his opinion as follows:

"It is now quite well settled that the personal transaction or communication between a witness having an interest in the result and a decedent, to which the inhibition applies, includes a transaction or communication of the decedent with another in the presence of the witness on the subject to which his interest relates, although the latter takes no actual part in it."

In Stillwell v. Boyer, 21 App. Div. 231, 47 N. Y. Supp. 666, which was an action in ejectment, it was held that a party was prohibited from testifying to a conversation had between the person through

whom he derived his title and a person under whom defendants claimed title, both being dead, although he took no actual part in the conversation and had no interest in the premises in question at the time it took place. To the same effect is the holding in Dolan v. Leary, 69 App. Div. 459, 74 N. Y. Supp. 981.

The later of the above decisions are based on the holdings of the Court of Appeals in Matter of Will of. Dunham, 121 N. Y. 575, 24 N. E. 932, and Matter of Bernsee, 141 N. Y. 389, 36 N. E. 314. Both of those cases involved the admission of wills to probate, and it was held that a beneficiary under a will, although taking no part and being a mere bystander, was incompetent to testify to transactions had between the testator and third persons. The underlying principle seems to be that because of his interest the communications with others in his presence being beneficial to him must be deemed to have been made to him.

Burdick v. Burdick, 180 N. Y. 261, 73 N. E. 23, was an action by an heir to set aside a deed executed by his ancestor to another. The defendant was held incompetent to testify to a conversation which she had overheard between the deceased and another and in which she took no part. Cullen, C. J., says:

"The witness being a party to the action was incompetent to testify to such transactions under section 829 of the Code, and it is settled by authority that such a disqualification includes conversations or transactions between the deceased and third parties, at which the witness was present, although she did not take part therein."

It will be observed that some of the later decisions cited are outside the class specified by Martin, J., in Eighmie v. Taylor, supra, and the rule which he laid down that only in those cases involving fraud, undue influence, and the like, was a party prohibited from testifying to a conversation in which he took no part, is too narrow, and that the prohibition applies to any conversation which affects the title of the party attempting to testify, whether he took part in it or not. It is of no importance that the defendant Hart had no interest in the subject-matter of the gift at the time the conversation between the plaintiff's intestate and his daughter was had and the property delivered to her. A prospective heir at law has no interest in the property of his ancestor until death, nor has a legatee or devisee any interest in the property of a testator until death. It, however, has been universally held that an heir at law cannot testify to what he observed respecting the feebleness of mind or body of the alleged testator for the purpose of defeating a will, nor can the legatee or devisee testify to his observations with respect to strength of mind or body for the purpose of sustaining it. Matter of Eysaman, 113 N. Y. 62, 20 N. E. 613, 3 L. R. A. 599; Holland v. Holland, 98 App. Div. 366, 90 N. Y. Supp. 208; Holcomb v. Holcomb, 95 N. Y. 316. An observation of weakness or strength is not in any strict sense a communication or transaction because nothing is said and the act cannot be directed to the observer, still the courts make it a transaction and a communication had between the deceased and the heir or the legatee because it is an act upon which each seeks to base his title. Relying upon such acts to make title, the courts very properly say that they appropriate the acts to

themselves and become participants in them, and, therefore, are disqualified from testifying to them.

But it is claimed that all the decisions which have been referred to and the theories upon which they are founded have been overthrown by the decision of the Court of Appeals in Hutton v. Smith, 175 N. Y. 375, 67 N. E. 633. It is true there are expressions in the opinion in that case which unfortunately have been woven into the syllabus, to the effect that where an interested party took no part in the transaction or communication, but was a mere spectator, he is not disqualified as a witness. The final holding of the case was that whether the interested witness was disqualified or not the testimony which she gave was not sufficiently material to call for a reversal of the judgment. It is perfectly manifest that it was not the intention of the court to repudiate the doctrine enunciated in Matter of Dunham, supra, and in Matter of Bernsee, supra, and to reaffirm the doctrine of Cary v. White, 59 N. Y. 336; Simmons v. Havens, 101 N. Y. 427, 5 N. E. 73, and O'Brien v. Weiler, 140 N. Y. 281, 35 N. E. 587, and kindred cases. On the contrary the intent was precisely the opposite. The cases last above cited are criticised and limited, and the Dunham Case and the Bernsee Case are both quoted from and commended as enunciating the true rule. Chief Judge Parker who wrote the opinion, says:

"Now turning to the O'Brien Case in 140 New York [35 N. E.] we find the court did hold it was not error to permit the witness to testify to an interview between the deceased and a third person of which the witness was a silent auditor, and cited in support of the decision Cary v. White and Simmons v. Havens, supra. Now, as has been noted, Cary v. White was distinguished and questioned in the Eysaman Case, and the only authority cited in Simmons v. Havens in support of the decision was Cary v. White; and it is clear in the light of the other authorities in this court to which reference has been made that the rule laid down in those cases and the earlier ones to which we have called attention, was too broadly stated. It has now been limited to this extent at least, that all conversations or transactions between persons since deceased and a third party in the presence or hearing of the witness may not be testified to by such witness, if he by word or sign participated in the transaction or conversation, or is referred to in the course of it, or was in any way a party to it."

It is from the last sentence, omitting the words "at least" that the syllabus of the case is formulated. It is plain that the language used was employed by way of argument, and that there was no intention of holding broadly that under no circumstances could an interested witness be disqualified from testifying even though he was a mere spectator. This view is strengthened and made conclusive by the later decision of Burdick v. Burdick, supra, in which it is expressly stated that an interested party might under some circumstances be disqualified from giving testimony concerning a transaction or communication between a deceased person and another although he took no part therein. Chief Judge Cullen, who wrote the opinion in the latter case, would not have enunciated such a rule if it had been previously repudiated in Hutton v. Smith.

My conclusion is that the defendant Hart was incompetent to give the testimony which he did, and that the judgment should be reversed and a new trial granted, with costs to the appellants to abide the event.