(98 App. Div. 366)

### HOLLAND v. HOLLAND et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. WITNESSES—COMPETENCY—TRANSACTIONS WITH DECEASED PERSONS.

On the issue of testator's sanity, children of testator interested in the setting aside of the will are incompetent, under Code Civ. Proc. § 829, prohibiting evidence of personal transactions and communications between interested persons and deceased, to testify as to the appearance of testator, and as to acts committed in their presence indicative of insanity.

2. SAME.

Under Code Civ. Proc. § 829, deceased's widow is incompetent, in a suit to set aside deceased's will, to testify as to the giving of a mortgage by her to a third party pursuant to a separation agreement entered into between herself and deceased.

Appeal from Trial Term, Cayuga County.

Action by Daniel M. Holland against Nellie Holland and others. From a judgment for plaintiff, and from an order denying a new trial, certain defendants appeal. Reversed.

The action was commenced on the 6th day of December, 1902, under section 2653a of the Code of Civil Procedure, for the purpose of having it adjudged that an instrument bearing date the 8th day of April, 1899, purporting to be the last will and testament of Cornelius Holland, deceased, and which was admitted to probate as such by the Surrogate's Court of Cayuga county on the 9th day of December, 1901, was invalid and void, and to set aside and vacate the probate thereof, on the ground that at the time the said instrument was executed the deceased was of unsound mind and incapable of making a valid testamentary disposition of his property; that he was possessed of the insane delusion that his wife was untrue to him in the marriage relation, and that his children were illegitimate, which controlled and impelled him to make the alleged will by which they were excluded from sharing in his bounty; and on the ground that the same was procured to be executed through undue influence exercised over the deceased, and by means of fraud practiced upon him.

Upon the trial certain of the issues of fact raised by the pleadings were eliminated or narrowed until there remained only the questions: "(1) Did the testator, Cornelius Holland, at the time of the execution of the will in question, entertain the insane delusion that his wife was untrue to him in the marriage relation, and that their children, or some of them, were illegitimate? (2) Did such insane delusion influence the testator in making the will in question? (3) Is the writing produced the last will of the testator?" Only those three specific questions were submitted to the jury. By their verdict they answered the first and second questions in the affirmative, and the third in the negative. Upon such verdict judgment was entered adjudging said will to be null and void, and setting aside and annulling the probate thereof. From such judgment, and from the order denying the defendants' motion for a new trial, this appeal is taken.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Albert H. Clark, for appellants.
F. D. Wright, for respondent.

McLENNAN, P. J. The testimony is voluminous, 25 witnesses having been called by the plaintiff, and about the same number by the answering defendants; but as we consider that certain objections and exceptions taken by the appellants to the admission of evidence, to which attention will be called, present reversible error, it is unnecessary to refer to the testimony in detail or at length. It is sufficient to say that it presents a fair question of fact as to each proposition submitted to the jury by the learned trial court.

Cornelius Holland died on the 7th day of April, 1901, at the city of Auburn, N. Y., where he had resided for many years, being then about 70 years of age. He left an estate, consisting of both real and personal property, of the value of about $10,000, and left, him surviving, the plaintiff, Daniel M. Holland, the defendants Nellie, Mary, and Eugene Holland, his children and only heirs at law; also the defendant Elizabeth Holland, his widow, and mother of his children. The other defendants are legatees or executors under the alleged will, by which substantially all of his estate was devised to them. The deceased was married to the defendant Elizabeth Holland in the year 1869, and they lived together as husband and wife until about the year 1883, during which time the four children above named were born. Concededly, the relations between the deceased and his wife and children were not harmonious; he claiming or asserting that his wife was unfaithful to him, and that the children, or some of them, were not his. On the 23d day of January, 1883, as a result of the conditions which existed, a separation agreement was entered into between the deceased and his wife, by which, among other things, she released all her interest in his property or estate; and at the same time, as a part of the agreement, he conveyed to her and to three of their children a farm upon which the family resided, which was effected by the execution and delivery of a deed of the same by himself and wife to one John Hogan, who, in turn, deeded it to said wife and children. At the same time the wife gave to Hogan a mortgage upon the premises to secure the payment of $1,000. After such agreement and transfers were made, the deceased left his family; and thereafter, so far as appears, no relations existed between him and his wife or the three younger children.

Some evidence was given tending to show that for some years prior to the separation and down to the time of his death the deceased was irrational and incapable of making a valid testamentary disposition of his property. The learned trial court, however, properly determined it was insufficient to establish that the deceased was irrational or incapable of transacting any business which did not involve his family, or the consideration of the relations and obligations which he sustained to them. The proposition to which most of the testimony offered by the plaintiff was directed was that the decedent during all those years, and at the time of the execution of the alleged will, was laboring under an insane delusion with respect to his wife and children, which had no basis in fact, but was the result of a disordered or diseased mind, and that such insane delusion controlled and impelled him to execute the

instrument in question, by which his wife and children were to be precluded from sharing in his estate. The evidence indicates that the deceased conducted all business not involving the consideration of his family in a perfectly sane and rational manner, and that his daily life and conversation was substantially normal, except when his attention was directed to them. In support of plaintiff's contention, evidence was given which tended to prove that the belief expressed by the deceased that his wife was unfaithful and his children illegitimate was a delusion, and was utterly without foundation; that there was no act, conduct, report, or even gossip, which would justify it, but that, notwithstanding, it possessed and controlled him to such an extent that it led him to treat his family cruelly, completely alienated his affection for them, and caused him to use violence towards and threaten the life of his wife, to act in an unnatural manner, and even to contemplate self-destruction. The greater part of the evidence introduced on behalf of the plaintiff consisted of a narration of the acts and conduct of the deceased in and about his home, a rehearsal of conversations had with or directed to members of his family, and a description of his appearance and manner when in their presence, all of which evidence was pertinent and material, and was given for the purpose of establishing the fact that the alleged insane delusion of the deceased completely dominated his actions and belief respecting his wife and children. This class of testimony was permitted to be given by two of the decedent's children, Daniel M. and Nellie Holland, who were parties to, and concededly interested in the result of, the action, notwithstanding it was objected to as being incompetent and improper under section 829 of the Code of Civil Procedure, upon the ground that it constituted a personal transaction or communication between them and their deceased father. In each instance the objection was overruled, the evidence admitted, and the appellants' counsel duly excepted.

Daniel M. Holland, the plaintiff, and decedent's oldest son, was asked:

"Q. Shortly before you left the farm and came to Auburn with your father, state what you saw your father do there at the farm which attracted your attention, and which you took no part in, and had nothing to do with yourself? A. Well, I saw him go around and break most of the machinery that was left on the farm. I saw him take a corn knife and cut a calf with it underneath the belly. * * * Then I saw him roll a big rock up and throw it in the cistern, to spring the bottom of it so it would leak; and then, when he came away from the house, the last thing he did was to get a small fire shovel and take some coals out of the stove and put them on the carpet, and then put a rug that laid on the floor on top of the coals, and left them that way—the coals of fire."

The witness further said:

"He [the deceased] acted excited and nervous-like, and looked wild, so that I was afraid of him. * * * I saw him take it [a revolver] out and he says to my mother, 'Do you want me to divide it with you?' and he stepped around in front of her, and he shot, and shot by her, and shot out the door. She was standing between him and the door. He shot twice. He pointed the revolver towards her on both occasions. My father did not say a word to me on that occasion, nor I to him. He said nothing to either of the other children on that occasion. They were not there. Mother then left and went to her sister in Waterloo. She didn't take the children with her at the time. They went to her after. Mother went away immediately without the children."

The witness further states that at the time his father was—

"Very excited and nervous, and he had a wild look—kind of a grin—on his face, and kept making motions all the time before he took the revolver out of his pocket, and in the room where he kept his drawer locked up—bedroom. Then he came out, and commenced sticking his hand in his pocket and pulled it out, and then at last he put his hand in his pocket and pulled the revolver out; acted as if he was going to do it and was kind of afraid to do it, or something."

Other occurrences of similar import were related by the witness. He was permitted to answer the following:

"Q. Did you ever see your father and the little boy, Eugene, together—hear anything between them in which you had nothing to do, and took no part whatever? A. Eugene was a little fellow, probably three years old, and he wanted something from his father, and I can't just remember what it was; and his father told him to go away, and that he was no boy of his. So he got that idea in his head that his father thought he wasn't his boy, or something. He used to follow him around quite often, and he would say, 'Pa, I is your boy.' He would say, 'Go away from me; you ain't; no, you are not mine.' He would say, 'Well, I is, just the same,' and used to follow him around quite often that way, and then cry about it—the young one would—and go in to his mother and say, 'Pa says I ain't his boy.'"

The witness was also permitted to testify that he never saw his father caress or take upon his lap either the little boy, Eugene, or his sister Mary.

Nellie Holland was also permitted to give considerable evidence of the same general character. She testified, when asked whether she ever observed anything on the part of her father that attracted her attention either at the Baker farm or at the Swamp farm:

"Why, of course; it was such a common occurrence. I noticed him excited, and my mother afraid of him. She was crying. Of course, I was quite young, and I don't remember any particular incident. I remember an instance when he came from the field to the house, and went through the house. I have seen him do that, and he was very excited all the time, specially— I never saw him only when some men came to the well for a drink, or some agent came to the door. On some occasion like that he would come to the house and get excited, but he never said anything in particular to my mother; but he always went through those motions, and grinning at her. I can't really say I ever heard him accuse her."

The evidence adverted to—and there was considerable more of the same tenor—was incompetent and improper, because within the inhibition of section 829 of the Code of Civil Procedure. In Holcomb v. Holcomb, 95 N. Y. 316, the rule is stated in the headnote as follows:

"The prohibition of the s.atute (Code, § 829) as to evidenc\ of personal transactions and communications between interested persons and the deceased extends to the testimony such persons might give as to such trans ctions for the purpose of showing the sanity or insanity of the deceased."

And in the opinion of the court it was said:

"The words of exclusion re as comprehensive as language can express. Transactions and communicat ins embrace every variety of affairs which can form the subject of negotiation, interviews, or actions between two persons and include every method by which one person can derive impressions or infor.a-tion from the conduct, condition, or language of an ther. The statute is beneficial one, and ought not to be limited or narrowed by construction. Although it must appear that the interview or transaction sought to be excluded was a personal one, it need not have been private or confined to the witness

and deceased. If they participated, it does not change its character because others were present."

In that case, which involved the validity of an instrument executed by the deceased, two witnesses, sons of the testator, were allowed to give evidence as to what they saw of him at the time of its execution. They were permitted to state what his appearance was; that he did not speak to either of them; that he did not open his mouth. Each testified to a mental and bodily condition of the assignor as indicated by conduct which they observed, and by his absolute inattention to them and their remarks, which showed that he did not comprehend the nature of the act which was the subject of investigation. It was held that such testimony was incompetent, and prohibited by the section of the Code referred to; the witnesses being interested parties. Another witness, similarly situated, was asked:

"Q. State what you heard your father saying or doing, or what you heard your father say when it was not addressed to you?"

And the witness answered:

"I have often heard him talking to himself and carry on conversations the same as though he was talking to somebody, and there was nobody in the house—that was, in the room he occupied. I listened to hear what he was saying."

It was held that the evidence was incompetent and improper. The court said:

"His [the witness'] testimony is not made admissible because his father did not solicit the interview, and was even ignorant of his presence. The words, when spoken, became a communication which he received. It was then a communication to him."

Further in that case the witness was permitted to say:

"I recollect of meeting my father on the road just below Big Hollow within two or three years of his death. I was in a wagon, and he on foot, walking. I saw him ahead. He was tottering along feebly. I stopped my horse and spoke to him, and he kind of stared at me. * * * I don't think he knew me."

It was held that all of such evidence was incompetent. The Holcomb Case has been cited with approval in many of the most recent decisions of the Court of Appeals involving the interpretation of section 829 of the Code, and it must be regarded as stating the correct rule applicable to the admissibility of the evidence adverted to.

In Matter of Eysaman, 113 N. Y. 62, 20 N. E. 613, 3 L. R. A. 599, the headnote is as follows:

"This rule excludes not only the testimony of transactions directly between the witness and the deceased, and communications made by the latter to the former, but any transaction between the deceased and others in any portion of which the witness participated, or any conversation in his hearing, although not with or addressed to him; also any testimony as to the acts and conduct of the testator observed by the witness tending to show mental capacity."

See, also, Gambee v. Gambee, 24 App. Div. 446, 48 N. Y. Supp. 501.

If the deceased had said to either of the witnesses Daniel M. or Nellie Holland that he was going to shoot or attempt to shoot their mother, it would not be claimed that they would not be precluded by the section of the Code from testifying to such conversation, although it

might be very cogent proof of his insanity. Such evidence would be excluded because it was a personal communication between the deceased and the witnesses, and so although they made no reply or took no part in the conversation. The transactions detailed by the witnesses were, in effect, the same. The father, instead of declaring his intention by words, fully expressed it by his acts in taking the revolver out of his pocket, pointing it toward the mother, and firing. Not only were the witnesses permitted to state what the deceased did, but they were allowed to say that he seemed excited and nervous, and that he had a wild look; all tending to establish the proposition that he at the time was insane or irrational.

It is concluded that the evidence to which attention has been called was within the inhibition of the statute, that it cannot be said it was not harmful to the appellants, and that therefore its admission over defendants' objection constitutes reversible error.

The widow of the deceased was permitted to testify, under defendants' objection, that when she executed the mortgage to John Hogan, which was a part of the transaction which resulted in the separation agreement entered into by the deceased and his wife, she did not receive the $1,000 which the mortgage was given to secure, nor any part of it. The inference to be drawn from such testimony is that the deceased, instead of deeding the farm to her and her children free and clear from all incumbrance, as indicated by his conveyance, in fact conveyed it incumbered for $1,000; that he, and not his wife, received the consideration of the mortgage from Hogan, the mortgagee. Giving the mortgage to Hogan was a part of the transaction between the witness and the deceased, and it was not competent for her to testify in respect to any part of such transaction.

Attention has been directed to several other exceptions of similar character taken by the appellants during the course of the trial, but, as the judgment and order appealed from must be reversed because of the admission of the evidence referred to, we deem it unnecessary to discuss them.

Judgment and order reversed and new trial granted, with costs to appellants to abide event. All concur.